In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00171-CR


______________________________




LEONARD WAYNE BLOUNT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Court No. 80194




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Leonard Blount appeals his conviction by a jury for the offense of aggravated sexual
assault of a child. The jury assessed his punishment at seventy years' imprisonment. 
Blount was accused of sexually assaulting the victim, whom Blount's mother often baby-sat
in her home.

 In his first issue on appeal, Blount contends he received ineffective assistance of
counsel. The standard for testing claims of ineffective assistance of counsel is set out by
the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in Hernandez
v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail, Blount must prove by a
preponderance of the evidence (1) that his attorney's representation fell below an objective
standard of reasonableness, and (2) that the deficient performance prejudiced his defense. 
Strickland, 466 U.S. at 687; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

 To meet this burden, Blount must prove that his attorney's representation fell below
the standard of prevailing professional norms and that there is a reasonable probability
that, but for his attorney's deficiency, the result of the trial would have been different. 
Strickland, 466 U.S. at 688, 694; Tong, 25 S.W.3d at 712. A reasonable probability is a
probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694;
Tong, 25 S.W.3d at 712.

 Any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness. Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999). Failure to make the required showing of either
deficient performance or sufficient prejudice defeats an ineffectiveness claim. Id.

 Our review of counsel's representation is highly deferential; we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. 
Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712. We will not second-guess through
hindsight the strategy of counsel at trial, nor will the fact that another attorney might have
pursued a different course of action support a finding of ineffectiveness. Blott v. State, 588
S.W.2d 588, 592 (Tex. Crim. App. 1979). The fact that another attorney, even Blount's
attorney on appeal, might have pursued a different course of action does not necessarily
indicate ineffective assistance. Harner v. State, 997 S.W.2d 695, 704 (Tex.
App.-Texarkana 1999, no pet.).

 Blount alleges his trial counsel was deficient for introducing, during cross-examination of the victim's mother, evidence that Blount had been accused of sexually
abusing other children. Counsel asked the victim's mother about an incident, occurring
before the victim made her accusation against Blount, in which the victim's mother said,
about Blount, that "there was a molester in the neighborhood." The victim's mother
responded she had heard that Blount had "did something to somebody else's kid." On
redirect examination, the State was able to elicit testimony that Blount had been accused
of sexually abusing two other children and that one of those children had been treated for
gonorrhea, just as the victim had been. 

 Blount cites Stone v. State, 17 S.W.3d 348, 352 (Tex. App.-Corpus Christi 2000,
pet. ref'd), in which, at the defendant's trial for delivery of cocaine, his trial counsel
introduced evidence the defendant had been convicted of murder and released from prison
more than ten years earlier. The trial court had already indicated the prior conviction was
inadmissible. Id. at 352-53; see also Tex. R. Evid. 609. The court of appeals held that,
under the facts of that case, no reasonable attorney would have introduced the prior
murder conviction and that the defendant was prejudiced by his attorney's error because
his credibility, on which his alibi defense depended, was undermined and because the prior
conviction gave substance to testimony that he had threatened the state's witnesses. 
Stone, 17 S.W.3d at 353.

 Stone is distinguishable because in that case no strategic basis for counsel's actions
appeared on the face of the record, and the court could conceive of no reasonable basis
for those actions. In the present case, one possible strategic basis for eliciting such
testimony was to discredit the victim's mother. Counsel asked the victim's mother why,
when she was aware of rumors that Blount had sexually abused another child, would she
put her daughter in an environment in which Blount would come in contact with her. 
Blount's defense at trial was that the victim fabricated the allegation or that someone else
assaulted her, as she was consistently exposed in her home to sexual situations,
pornographic material, and a stream of men who had the opportunity to assault her. 
Blount's defense therefore relied on the poor supervision exercised by the victim's mother. 
From that standpoint, counsel could have concluded that bringing to light the victim's
mother's poor supervision was worth the risk of informing the jury about rumors of other
accusations of Blount's sexual abuse. Though counsel's actions may seem imprudent in
hindsight, it is not for us to second-guess her strategy.

 Blount next contends his trial counsel was deficient in failing to introduce records
that one of the other allegations against him had been investigated by Child Protective
Services and dismissed. However, Blount's counsel called that child's mother as a witness. 
She testified that an investigation found that Blount engaged in no wrongdoing with respect
to her daughter. Thus, on the record before us, counsel's actions do not constitute
deficient performance.

 Blount further contends his trial counsel was deficient for failing to object when the
State introduced evidence of his prior extraneous bad conduct. On cross-examination of
Blount's brother, the State asked him to "tell me about your brother." Blount's brother
responded, in part, that Blount is "a good person." The State then elicited testimony that
Blount had been involved in an unauthorized use of a motor vehicle offense, had used
drugs, and had associated with and/or was a member of a gang. Blount's attorney made
no objection to this line of questioning.

 Blount contends that, assuming this extraneous transactions evidence would have
been admissible under Tex. R. Evid. 404(b), the State failed to give "reasonable notice . . .
in advance of trial of [its] intent" to use these accusations. However, the record is
inconclusive concerning whether the State gave notice of its intent to use additional
accusations of sexual abuse in its case-in-chief. At a pretrial hearing, the trial court heard
Blount's request for notice of intent to offer extraneous conduct under Rule 404(b). The
trial court inquired of the State whether it had given the requested notice. Blount's trial
counsel commented, "I have been provided with a written response to that, Your Honor." 
The trial court asked, "Is that by response, you mean, a notice?" Blount's attorney
responded, "Yes, sir." 

 No copy of the notice Blount's attorney received is included in the record. 
Therefore, we cannot assume, on the record before us, the State would have been
prevented, by its failure to give reasonable notice, from using the other accusations of
sexual abuse made against Blount in its case-in-chief.

 Blount contends this extraneous transaction evidence was inadmissible and no
reasonable attorney would have refrained from objecting to it. We agree that counsel
could have had no reasonable basis for refraining from objecting to evidence of her client's
bad acts, unless that evidence was otherwise admissible. Thus, whether counsel's
performance was deficient turns on the question of whether the evidence was admissible.

 The general rule is that evidence of other crimes, wrongs, or acts is inadmissible to
prove a person's character, but that evidence is admissible for other purposes. Tex. R.
Evid. 404. If an objection is made to extraneous offense evidence under Rule 404(b), the
proponent of the evidence must persuade the trial court that the evidence has relevance
apart from character conformity, e.g., it tends to establish some elemental fact, such as
identity or intent; that it tends to establish some evidentiary fact, such as motive,
opportunity, or preparation leading inferentially to an elemental fact; or that it rebuts a
defensive theory, e.g., by showing the absence of mistake or accident. Tex. R. Evid.
404(b); Montgomery v. State, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990) (op. on
reh'g); McAllister v. State, 34 S.W.3d 346, 353 (Tex. App.Texarkana 2000, pet. ref'd).

 Even if Blount's identity was in issue, the extraneous bad conduct to which his
brother testified-Blount's involvement in an unauthorized use of a motor vehicle offense,
using drugs, and associating with a gang-would not be probative of his identity in this case,
where he was charged with aggravated sexual assault of a child. Blount also did not
contest the issue of intent; rather, he defended himself on the basis that he did not commit
the offense, but that someone else must have. The victim's testimony supplied the intent
element of the offense, as the State accused Blount of intentionally or knowingly causing
the penetration of the victim's sexual organ by inserting his sexual organ. See Tex. Pen.
Code Ann. § 22.021(a)(1)(B)(i) (Vernon Supp. 2001). Even if identity or intent was in issue,
the extraneous transaction evidence was not probative of those questions.

 Similarly, the extraneous transaction evidence was not probative on Blount's
opportunity to assault the victim or on his motive for doing so. Rather, the extraneous
transaction evidence had the tendency to portray Blount as a criminal generally, which Rule
404(b) prohibits.

 Further, the extraneous transaction evidence did not rebut Blount's defensive theory
that another man assaulted the victim or that the victim fabricated the accusation. 
Arguably, the State offered the extraneous transaction evidence to rebut the impression
that Blount is "a good person." However, the State elicited this testimony by asking
Blount's brother to "tell me about your brother." Consequently, we agree with Blount that
no reasonable attorney would have refrained from objecting to the extraneous transaction
evidence.

 The State contends that even if the instances Blount cites constitute deficient
performance, the result of the trial would not have been different. The eight-year-old victim
testified that Blount put his penis into her vagina and that he assaulted her between five
and ten times. She also testified Blount was the only person who ever assaulted her. 

 The victim's mother testified that the victim told her Blount was "messing with me"
and that the victim had injuries in and around her vaginal area. The jury was also shown
a videotape in which the victim told a sexual assault interviewer about the assault. The
State offered medical evidence showing that the condition of her vaginal tissue was
consistent with penile penetration. 

 The State also presented Blount's statement to police in which he admitted
assaulting the victim about five different times. The officer who took the statement testified
that he asked Blount if he had any sexually transmitted diseases and that Blount
responded that he had gonorrhea. The State presented medical records that the victim
also tested positive for gonorrhea. 

 In light of the evidence against him, the fact that the victim's testimony was
corroborated by her prior statements to her mother and to the sexual assault interviewer,
the medical evidence of an assault, and the medical evidence linking Blount to the assault,
there is no reasonable probability that the outcome of Blount's trial would have been
different absent his counsel's errors. We overrule Blount's first issue on appeal.

 In his second issue on appeal, Blount contends the trial court erred in failing to file
written findings of fact and conclusions of law after conducting a hearing concerning the
voluntariness of a statement Blount made to police. He requests this Court to abate this
appeal and remand the case to the trial court for entry of such findings, after which he
requests that we afford him an opportunity to supplement his brief to address issues raised
by those findings.

 Article 38.22, § 6 of the Texas Code of Criminal Procedure requires that any time
a question is raised about the voluntariness of an accused's statement, the trial court must
make "an independent finding in the absence of the jury as to whether the statement was
made under voluntary conditions." Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon
1979). If the trial court finds the accused made the statement voluntarily, it must "enter an
order stating its conclusion as to whether or not the statement was voluntarily made, along
with the specific finding of facts upon which the conclusion was based, which order shall
be filed among the papers of the cause." Id.

 The record shows that at the end of the hearing the trial court recited the following:

 The Court finds that the [sic] pursuant to Article 38.22, Section 2,
subparagraph (a) the police officer did admonish Mr. Leonard Blount of his
Miranda warnings, of the warnings therein prescribed.

 The Court further finds that according to the evidence that the
defendant did prior to and during the making of the statement, knowingly,
intelligently and voluntarily waive these rights set out in the warnings set out
in subparagraph (a) of this section.

 [T]he Court finds that the statement is voluntary; the Court finds that
the statement is admissible.


The State contends these findings, dictated into the record, are sufficient to comply with
Article 38.22, § 6. We agree.

 A long line of Texas Court of Criminal Appeals cases holds that Article 38.22, § 6
is mandatory and requires a trial court to file findings of fact and conclusions of law
regarding the voluntariness of a defendant's statement, regardless of whether the
defendant objects to the absence of such omitted findings. Green v. State, 906 S.W.2d
937, 938-39 (Tex. Crim. App. 1995); Wicker v. State, 740 S.W.2d 779, 783 (Tex. Crim.
App. 1987); Dykes v. State, 649 S.W.2d 633, 636 (Tex. Crim. App. 1983); McKittrick v.
State, 535 S.W.2d 873, 876 (Tex. Crim. App. 1976); Hester v. State, 535 S.W.2d 354, 356
(Tex. Crim. App. 1976); see Butler v. State, 790 S.W.2d 661, 662 (Tex. Crim. App. 1990);
see also Creager v. State, 952 S.W.2d 852, 856-57 (Tex. Crim. App. 1997). However,
numerous courts have also held there is sufficient compliance with Article 38.22, § 6 when
the trial court dictates its findings of fact and conclusions of law to the court reporter at the
end of the hearing, and those findings are transcribed and made a part of the record
without objection. Parr v. State, 658 S.W.2d 620, 623 (Tex. Crim. App. 1983); Amunson
v. State, 928 S.W.2d 601, 607-08 (Tex. App.-San Antonio 1996, pet. ref'd); see also Lee
v. State, 964 S.W.2d 3, 12 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd); Perkins v.
State, 779 S.W.2d 918, 925 (Tex. App.-Dallas 1989, no pet.); Horn v. State, 699 S.W.2d
714, 716 (Tex. App.-Fort Worth 1985, no pet.).

 Blount does not complain the trial court's findings are insufficient to aid this Court
in determining the basis for its conclusion. Under these circumstances, there is no error. 
We overrule Blount's second issue on appeal.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: September 14, 2001

Date Decided: October 24, 2001


Publish



ion of Lockett, he was unable to produce evidence that his vehicle was
properly insured, another violation of the law. See Tex. Transp. Code Ann. § 601.053 (Vernon
1999). After being properly detained and when asked to step outside of his vehicle, Lockett sped
away, which constituted the offense of evading detention. See Tex. Pen. Code Ann. § 38.04
(Vernon 2003). During the pursuit of Lockett's vehicle, Cook observed him throw an object out of
his window. Blanco found the bag of cocaine in the area that Cook observed Lockett toss the white
object. We find there was ample evidence to support the officer's arrest of Lockett and the
subsequent seizure of the substance. The decision by counsel not to challenge this seizure is
reasonable and is certainly not evidence of ineffective assistance of counsel. 
The Batson Challenge
            A defendant has the right to be tried by a jury whose members have been selected in a
nondiscriminatory fashion. Batson, 476 U.S. at 85–86. 
            Lockett alleges this right was violated at his trial by the State's use of its peremptory
challenges and the failure of the trial court to sustain Lockett's Batson objections. Specifically,
Lockett argues that veniremembers 16, 20, 25, 27, 33, and 43 were struck improperly and without
race-neutral explanations by the State. Lockett proved that he was an African-American and that no
African-Americans were seated on the jury. 
            A three-step process is used in determining Batson challenges. The first step requires the
opponent of a peremptory strike to present a prima facie case of racial discrimination. The second
step requires the proponent of the strike to produce a race-neutral explanation. When such an
explanation is offered, the trial court must decide whether the opponent of the strike has proved
purposeful racial discrimination. If the State offers a race-neutral explanation, the burden is on the
defendant to convince the court that the State's reasons were not race neutral. See Ford v. State,
1 S.W.3d 691, 693 (Tex. Crim. App. 1999). At the third stage, the defendant may rebut the State's
explanation to show it is a pretext concealing discrimination. Purkett v. Elem, 514 U.S. 765, 767–68
(1985). 
            We review a Batson ruling by considering the record in the light most favorable to the trial
court's ruling. Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). We review the record
to determine if the trial court's decision was clearly erroneous—whether after examining the record,
we are left with the definite and firm conviction that a mistake has been made. Guzman v. State, 85
S.W.3d 242, 254 (Tex. Crim. App. 2002). 
            Venireperson number 16—The State's explanation for striking venireperson number 16 was
that he was a postal employee: "He didn't speak. We don't know anything about him. 
Characteristics of postal employees are they fly off the handle. You don't know what's going on,
even the term, 'going postal.'" We have some of the same reservations about labeling postal
employees generally as the court in Tompkins v. State, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987),
aff'd, 490 U.S. 754 (1989) ("We have some difficulty understanding the relevancy of a venireperson's
employment as a postman . . . as far as his qualifications for jury service."). However, we cannot
require the State's explanation to be plausible or persuasive so long as it is racially neutral. 
Hernandez v. New York, 500 U.S. 352, 360 (1991). Unless a discriminatory intent is inherent in the
State's explanation, the reason offered will be deemed racially neutral. Id. This explanation is
facially valid and shifted the burden of persuasion to Lockett. Lockett did not rebut the State's
reason for the strike to show it was merely a pretext for concealing discrimination. We cannot say
the trial court clearly erred in overruling the objection to this peremptory challenge. 
            Venireperson number 20—The State explained it struck venireperson number 20 because of
previous criminal accusations—"she has an issue, warrant of a bad check conviction out of JP Court
in the Year 2000." On query by the trial court, the State further explained that the matter was not
a conviction but "issuance." Apparently, this refers to issuance of a warrant for the violation. This
explanation is facially neutral. The fact that a venireperson has some previous charges or some form
of alleged criminal violation is a traditional rationale for exercising a peremptory challenge. 
Frierson v. State, 839 S.W.2d 841, 853 (Tex. App.—Dallas 1992, pet. ref'd). Lockett has not
rebutted the explanation, and there is nothing in the record to overturn the trial court's finding that
no racial motive was involved. 
            Venireperson number 25—The State originally referred to this person as number 26, but the
court referred to him as number 25. The explanation for the strike was that he "was saying that five
years was too much." During the State's presentation of voir dire examination, venireperson number
25 expressed some reservation concerning a range of punishment of five to ninety-nine years'
confinement. Striking a venireperson who expresses doubt about the full range of punishment is race
neutral. See Barron v. State, 864 S.W.2d 189, 191 (Tex. App.—Texarkana 1993, no pet.). No
showing was made by Lockett that such a strike was a sham or pretext. 
            Venireperson number 27—The State explained this juror had her eyes closed for much of the
voir dire examination, appeared to sleep, and was inattentive. Appellate courts should carefully
evaluate the adequacy of counsel's observations of a veniremember's demeanor as a race-neutral
reason, but the appellate court should not hold as a matter of law that a subjective assessment is a
pretext. See Yarborough v. State, 947 S.W.2d 892, 896 (Tex. Crim. App. 1997). The trial court,
who witnessed the demeanor of the veniremembers, is in a better position than an appellate court to
judge the credibility of observations about the demeanor of venirepersons. Lockett did not challenge
the statements by the State concerning the appearance and lack of attentiveness by this venireperson,
and such statements constitute a sufficient record to uphold the trial court's finding. 
            Venireperson number 33—The venireperson notified the court and attorneys that he had been
in an automobile accident, was being treated by a chiropractor, and had more appointments
scheduled. He did not know the date for his next appointment, but his usual days were Mondays,
Wednesdays, and Fridays. The State's rationale for striking this venireperson was that he would be
unavailable on certain days during the trial. During the course of the voir dire examination, the trial
court inquired as to the name and telephone number of his doctor and stated, "We can try to contact
him and see when it is and see if you can reschedule." After the State's explanation of the juror
challenge, the defense countered that, "[w]e never heard back as to whether or not he was able to
reschedule." The court observed that neither side spoke to him further concerning whether he was
able to reschedule the appointments. It is not clear from the record that the venireperson was asked
to reschedule the appointment; the record appears to suggest that the trial court's statement, "We can
try to contact him" indicated that a court official would make that attempt. However, no other
information was produced. The fact a venireperson has a medical condition and required medical
attention, thereby creating a problem for attending the trial, is a race-neutral reason for exercising
the strike. There is no evidence that such a reason was pretextual. 
            Venireperson number 43—This venireperson stated that one of Lockett's attorneys had
represented her "sister's father's kids." The State explained that it used a jury strike on this person
because one of Lockett's lawyers had "represented an acquaintance or former in-law." The attorney
acknowledged to the trial court that the venireperson's statement was accurate. A conventional
question asked on voir dire examination is whether any of the members of the panel know any of the
attorneys in the case. The fact that this venireperson knew one of the attorneys representing Lockett
in this case was a race-neutral explanation for the peremptory challenge. We hold the trial court did
not err in overruling the Batson motion. 
Factual Sufficiency
            In our review of the factual sufficiency of the evidence concerning matters where the State
has the ultimate burden of proof or persuasion, we employ the standards set forth in Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We view all the evidence in a neutral light and
determine whether the evidence supporting the verdict is too weak to support the finding of guilt
beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d 654,
664 (Tex. Crim. App. 2004) (citing Zuniga, 144 S.W.3d at 486). If the evidence is factually
insufficient, then we must reverse the judgment and remand for a new trial. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996).


 
            The charge was that Lockett possessed, with intent to deliver, a controlled substance, cocaine,
weighing more than four grams and less than 200 grams, including any adulterants and dilutants. 
See Tex. Health & Safety Code Ann. § 481.112(a), (d) (Vernon 2003). "Possession" means
actual care, custody, control, or management. Tex. Health & Safety Code Ann. § 481.002(38)
(Vernon Supp. 2005). Intent to deliver may be shown by circumstantial evidence. Williams v. State,
902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Additionally, intent to
deliver may be inferred from the (1) quantity of drugs possessed, (2) the nature of the location where
the defendant was arrested, (3) the manner of packaging the drugs, (4) the presence or absence of
drug paraphernalia, (5) whether the defendant possessed a large amount of cash in addition to the
drugs, and (6) the defendant's status as a drug user. Guy v. State, 160 S.W.3d 606, 614 (Tex.
App.—Fort Worth 2005, pet. ref'd). 
            Here, after Lockett was stopped for a traffic offense, he attempted to drive away from the
arresting officer. The officer followed him and saw Lockett throw an object from his vehicle. A
second officer, after being advised as to the whereabouts of the object, found a clear bag in the
location indicated. It contained five "cookies" found to contain 95.25 grams of cocaine, a fairly
significant quantity. The "cookies" were packaged in a clear bag—according to Blanco, a common
manner of packaging cocaine. Inside Lockett's car, a search revealed a brown bag containing
$1,538.00 in cash. A pocket in that bag contained residual amounts of cocaine. The amount of
cocaine, large amount of cash, manner of packaging, and residue found support an inference that
Lockett intended to deliver the cocaine. 
            Lockett argues that the evidence is factually insufficient, pointing out as contravening
evidence: (1) it is not uncommon to find cocaine on the city streets, (2) the cocaine was in a more
crumbled condition at the trial than when it was found, and (3) the vagueness of the information
given to the deputy who found the cocaine. These arguments are in the nature of factual disputes
or conclusions drawn from the facts—all of which are matters for a jury to resolve. It is not within
our authority to merely substitute our own judgment for that of the jury. After reviewing all the
evidence in a neutral light, we conclude that the evidence supports the verdict of guilt beyond a
reasonable doubt. Further, the controverting evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met. 
Prejudicial Closing Arguments
            In the closing argument, Lockett argued that the roads contain a lot of trash and that a person
cannot be responsible for items disposed of by another person. In response, the State argued that
Lockett's counsel maintained that the road was full of trash and that there might be trash on either
side of the road. The State then argued, "He might also have you believe that there is crack cocaine,
$9500 worth of crack cocaine." An objection was presented that the argument was outside the
record. The trial court admonished the State to stay within the record, but denied a motion to instruct
the jury to disregard the statement. Lockett argues there is no evidence to support the statement that
the cocaine was worth $9,500.00, that such statement was outside the record, highly prejudicial, and
compels a reversal.
            The State reasons the jury argument was supported by the testimony of Blanco, who stated
that a "rock" weighs approximately .1 gram and sells for $10.00 to $20.00. Since this cocaine
weighed more than 95 grams, the State argues Blanco's testimony supports the value of $9,500.00
(95 grams of cocaine = 950 rocks x $10.00 =$9,500.00). However, the State fails to mention that,
when this testimony was presented by Blanco, the trial court sustained an objection to its
admissibility as follows:
Q.And how is that packaged usually, sir?
 
A.It is usually packaged in clear packages. It will take a cookie form and
it's sold. When it's being packaged for sale, it's -- it can be cut into small pieces to
be sold for ten dollars, twenty dollars. 
 
[Defense counsel]: Your Honor, I object. That wasn't the question.
 
THE COURT: Sustained.
 
[Defense counsel]: He's going into a narrative.
 
THE COURT: Question is as to packaging. 

The original question concerned the manner of packaging the cocaine. The answer included
evidence concerning the value of the cocaine; the trial court sustained an objection and limited the
answer to packaging. Therefore, the State may not rely on this testimony to support the jury
argument regarding the value of the drugs. 
            Cook testified that the value of a "crack rock" is approximately $20.00 and that a "rock"
weighs between .4 and .5 grams. He further testified that a twenty-gram crack cocaine "cookie" had
a street value of between $100.00 and $150.00. Cook's testimony supports a maximum value for the
drugs ranging from $3,800.00 to $4,760.00 (95 grams of cocaine converted into "rocks" each
weighing .4 to .5 grams = 190 to 238 rocks x $20.00 per rock = $3,800.00 to $4,760.00). Therefore,
the evidence presented and admitted before the jury does not authorize an argument that the value
of the cocaine was $9,500.00, and the trial court erred in overruling the motion to instruct the jury
to disregard the argument. Having found error, we will consider whether reversible error is
presented.
            The Texas Court of Criminal Appeals has held that comments by the State on matters outside
the record should be reviewed using the standard of harm for nonconstitutional errors. Martinez v.
State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000). Nonconstitutional error "that does not affect
substantial rights must be disregarded." Tex. R. App. P. 44.2(b). In making this determination, we
are to balance the following three factors: (1) severity of the misconduct (prejudicial effect),
(2) curative measures, and (3) the certainty of the conviction absent the misconduct. See Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). 
            (1)       Severity of the misconduct (prejudicial effect)—Here, the State argued that the value
of the cocaine was $9,500.00 when the maximum the evidence justifies is approximately one half
that amount. We do not find this to be an extremely prejudicial statement. While the statement is
erroneous, based on the admitted evidence, it does not introduce new or extraneous subject matter,
but is a misstatement of degree. The jury knew, from properly admitted testimony, that Lockett
possessed several thousand dollars' worth of cocaine. 
            (2)       Curative measures—There were no curative measures taken by the trial court.
            (3)       The certainty of the conviction absent the misconduct—The evidence has been
previously outlined—it includes Lockett's attempt to elude a police officer, dispose of the
contraband, and the recovery of a large amount of cocaine and cash. The cocaine was found at the
location the officer observed Lockett throw it out the window. Even without the improper reference
to the value of the contraband, the inculpatory nature of the evidence presented made Lockett's
conviction highly certain. Lockett also argues that this evidence affected his sentencing. Lockett
was found to have previously committed two felony offenses, which required a minimum
punishment of twenty-five years' confinement and allowed a maximum of life imprisonment. The
jury assessed punishment at forty-two years' confinement—nearer the lower end of the punishment
range. There was potent evidence to support the punishment assessed by the jury without any
consideration of an improper jury argument. 
            We find the improper jury argument did not affect Lockett's substantial rights and must be
disregarded. 
Constitutionality of Texas System for Enhancement of First-Degree Felonies
            This point of error, as stated, argues that the Texas system for sentencing first-degree felonies
enhanced by state-jail felonies is unconstitutional. However, the body of the argument never
mentions state-jail felonies until the concluding prayer. Perhaps the explanation is that the two
felonies used to enhance Lockett's punishment were not state-jail felonies, but at the time of the
previous convictions, were second-degree felonies (less than 28 grams). There is no evidence that
the two prior felonies used to enhance Lockett's punishment would now be classified as state-jail
felonies (less than one gram). See Tex. Health & Safety Code Ann. § 481.115(b) (Vernon 2003). 
            At trial, Lockett presented the trial court with a motion to declare the Texas sentencing
system unconstitutional. The argument advanced was that the United States Supreme Court decision
in Apprendi


 and other cases required a jury finding concerning facts used to enhance punishment. 
The court denied the motion to declare the Texas sentencing system unconstitutional. Again, the
argument based on Apprendi is not mentioned in Lockett's brief to this Court; we will not address
it further.
            As we understand the brief, Lockett argues that the Texas sentencing system gives no
guidance to the jury and allows "unbridled discretion of judges and juries to carry our sentencing in
a dangerously 'willy-nilly' manner." Further, such unrestricted discretion imperils Eighth
Amendment promises. We interpret Lockett's issue to present a challenge to the facial validity to
Article 12.42(d), as such may be raised for the first time on appeal. Ex parte Flores, 130 S.W.3d
100, 106 (Tex. App.—El Paso 2003, pet. ref'd). In a facial challenge to the constitutionality of a
statute, the challenger must establish that no set of circumstances exists under which the statute will
be valid. Santikos v. State, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). The Texas Court of
Criminal Appeals has held that Article 12.42(d) does not violate the Eighth Amendment. 
Armendariz v. State, 529 S.W.2d 525, 527 (Tex. Crim. App. 1975). We overrule Lockett's point of
error. 
Admission of Exhibits
            Lockett contends the trial court erred in admitting exhibits 11 and 13. At trial, the objection
to exhibit 13 (a certified copy of a judgment from the district clerk of Montgomery County, Texas)
was that the number assigned to the case as shown on the first page of the judgment contained the
letters "CR" after the number 91-03-00397, whereas the certificate from the district clerk's office
only has the number and does not also have the letters "CR." Further, the certificate from the clerk
appeared on page three of a five-page document. These objections had no merit, and the trial court
properly overruled them. 
            As to exhibit 11 (a certified copy of a judgment from the district clerk of Harris County), the
objection was that the same judgment also was in evidence in a pen packet. The trial court, after
reviewing the two documents, stated that State's exhibit 11 appeared to be more legible than the last
page of State's exhibit 10 and overruled the objection. Both pen packets and certified judgments of
conviction are admissible evidence in the punishment phase of a trial. Tex. R. Evid. 901(b)(7),
902(1), (4); Reed v. State, 811 S.W.2d 582, 587–88 (Tex. Crim. App. 1991). The trial court has
broad discretion in the admission of evidence. We review a trial court's ruling admitting evidence
under an abuse of discretion standard. Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App.
1999). The ruling is reversed only if it is outside the zone of "reasonable disagreement." 
Montgomery v. State, 810 S.W.2d 372, 388–90 (Tex. Crim. App. 1990) (op. on reh'g). Here, the trial
court examined the documents and articulated a plausible rationale for admitting the judgment. We
cannot say that determination was outside the zone of reasonable disagreement. 
            Lockett also objected to the introduction of all pen packets based on his theory that the Texas
system for enhancing felony offenses is unconstitutional. We have overruled Lockett's constitutional
argument, and further find the trial court did not err in admitting the pen packet.
            The point of error is overruled. We affirm the judgment of the trial court. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 27, 2006
Date Decided:             April 13, 2006

Do Not Publish