Benjamin STONE, Sr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–97–845–CR.

Court of Appeals of Texas,
Corpus Christi.

April 13, 2000.

Benjamin Stone, Sr., Palestine, pro se.

Noel Henry Reese, Gonzales, for appellant.

W.C. Kirkendall, Seguin, for State.

Before Chief Justice SEERDEN and Justices DORSEY and RODRIGUEZ.

## OPINION

DORSEY, Justice.

The issue in this case is whether appellant received ineffective assistance of counsel during his trial for delivery of a controlled substance when his attorney called him to testify and elicited from him testimony regarding a prior murder conviction that the State would not have been allowed to bring up otherwise. We hold that appellant has shown ineffective assistance of counsel and reverse and remand.

Stone was convicted of delivery of a controlled substance after a one-day jury trial and was sentenced to ten years imprisonment and a $10,000 fine. In 1980, Stone was convicted of murder and served five years in the penitentiary for that crime. During voir dire in the present case, the issue arose of whether the remote murder conviction would be admissible against him in the present case. The court indicated that it would not allow evidence regarding the murder conviction during the guilt-innocence stage of the trial. The State did not attempt to bring it up. However, Stone's own attorney called Stone to the stand and brought up the prior murder conviction directly. We hold that no reasonably competent attorney could have believed that introducing that evidence amounted to sound trial strategy, and find, therefore, that Stone received ineffective assistance of counsel.

It is common practice for a defense attorney to elicit from his own client evidence regarding a prior conviction when counsel knows or reasonably believes that if he does not bring it up first, the State will. The belief is that getting the issue out first will "pull the sting" from the impact of its coming from the State. However, in this case, the State could not have introduced evidence of Stone's prior conviction. Not only did the court indicate at the pre-trial bench conference that he would not allow the evidence during the guilt-innocence portion of the trial, the court would have been required to make that ruling under the applicable law.

Texas Rule of Evidence 609(b) states that evidence of a prior conviction may not be used for the purpose of attacking the credibility of a witness if more than ten years has elapsed since the date of the conviction unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effects. TEX. R. EVID. 609(b). Since the State did not seek to introduce that evidence, the trial court did not make the finding required to allow it. We can see no possible benefit to be gained by Stone "fronting" this issue to the jury, especially when weighed against the facts of this case which made that evidence particularly dangerous for Stone, and in light of the fact that the State would not have been able to introduce evidence about it.

The Texas Court of Criminal Appeals recently detailed the analytical framework for claims of ineffective assistance of counsel:

> Texas courts adhere, as we must, to the United States Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). The defendant must first show that counsel's per-

formance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); *Ex Parte Menchaca,* 854 S.W.2d 128, 131 (Tex.Crim.App.1993). Second, assuming appellant has demonstrated deficient assistance, it is necessary to affirmatively prove prejudice. *McFarland v. State,* 928 S.W.2d at 500. In other words, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez v. State,* 726 S.W.2d at 55. This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result. *McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Ex parte Scott,* 581 S.W.2d 181, 182 (Tex.Crim.App.1979). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland v. State,* 928 S.W.2d at 500. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* Absent both showings an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Ex parte Menchaca,* 854 S.W.2d at 131. Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App.1984). An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Ex Parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim.App. 1991).

*Thompson v. State,* 9 S.W.3d 808, 812–13 (Tex.Crim.App.1999).

■ Our first question is whether Stone's counsel's performance was deficient, *i.e.,* that his assistance fell below an objective standard of reasonableness. *Thompson,* 9 S.W.3d at 812; *McFarland,* 928 S.W.2d at 500; *Ex Parte Menchaca,* 854 S.W.2d at 131. However, before we reach that question, it is necessary to determine whether the record in this case is adequate to evaluate counsel's performance. A claim of ineffective assistance must be firmly rooted in the record. *Jackson v. State,* 877 S.W.2d 768, 771–72 (Tex. Crim.App.1994). A serious obstacle to many such claims is the lack of an adequately developed record. *Thompson,* 9 S.W.3d at 813–14. In fact, the court of criminal appeals recently spoke to that issue:

A substantial risk of failure accompanies an appellant's claim of ineffective assistance on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.

*Thompson,* 9 S.W.3d at 813–14.

■ The reason an adequate record is so important in these cases is because in the absence of a record, the court will indulge strong presumptions that counsel's performance was a part of trial strategy, and typically will not second-guess a matter of trial strategy. *See Young,* 991 S.W.2d at 837–38. We must presume

"that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Young*, 991 S.W.2d at 837. We presume that counsel's conduct lies within the "wide range of reasonable representation" and constitutes sound trial strategy. *McFarland*, 928 S.W.2d at 500. We must evaluate the quality of the representation from counsel's perspective at trial, rather than counsel's isolated acts or omissions in hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986).

The record of this case reveals that the State's case centered around the testimony of two undercover informants who had orchestrated the drug buy from Stone. Cristal Kubicek testified that she was a narcotics sergeant's investigator and had worked on many undercover narcotics cases. She testified that on the night of the drug buy, she was riding with a confidential informant, Barbara Miller, who had previously introduced her to Stone. On that night, she and Miller drove up to the parking lot of a club. Miller got out of the car, leaving Kubicek in the passenger's seat. Kubicek saw Stone and motioned for him to approach the car. She asked him if he had a "twenty," which means "one rock" of crack cocaine.

At that point, she testified, Stone got into the car with her and told her if he "caught a case on this," meaning if he was being set up by the police on the drug buy, he would "take care" of Kubicek and Miller. They argued, and Kubicek attempted to leave. She testified that after Miller got back in the vehicle and they started to leave, Stone approached her and sold her the crack. She testified, though, that, again, "the last words out of his mouth were, 'I swear to God that if I catch a case on this, I will kill you both.'" She also testified that of the many undercover drug buys she has conducted, she has only been threatened like that one other time. Kubi-

cek also testified that while she was in the courtroom the previous day, Stone had caught her eye and mouthed the words "whore" and "bitch" at her.

Barbara Miller's testimony corroborated Kubicek's. She heard Stone threaten to kill the two women if he wound up getting busted for selling the crack to them. She was positive that she had heard Stone threaten to kill them if he "caught a case" over the transaction. She also testified that she had gone to school with Stone and thus had known him for about twenty years. The State put on two other witnesses who testified to the chain of custody and that the substance was cocaine.

Stone's defense was that of alibi, consisting of his and his wife's testimony. His wife testified first that she remembered the night in question specifically and that her husband was with her the entire evening. Then Stone testified that he remembered the night in question specifically and that he was with his wife the entire evening. He denied threatening anyone at all or, particularly, threatening to kill anyone that night. With regard to the prior conviction, his attorney solicited the following testimony:

Q. Mr. Stone, you are Benjamin Stone, Sr., are you not?

A. Yes, I am.

Q. Are you the same Benjamin Stone that on February 14th, 1980, ... in the 25th Judicial District of Gonzales County ... was convicted of murder?

A. Yes, I was, but it was—

Q. That is all of the question.

A. Yes, sir.

Q. Were you sentenced to the penitentiary?

A. Yes, sir.

Q. Did you serve some time in the penitentiary?

A. Five years and six months.

Q. Were you paroled?

A. Yes, I was.

Q. Are you on parole today?

A. No, sir. I finished up February 14th, 1995.

Q. You have had other problems with the law?

A. Yes, I have.

Q. But nothing serious enough to send you to the penitentiary?

A. No, sir.

■ Under the particular facts of this case, we find the record is adequate to show trial counsel's ineffectiveness with regard to admitting the prior murder conviction. The reason for developing a record here would be to ask Stone's attorney what his strategy was in offering the prior conviction evidence through the defendant when it would not come in otherwise. We are convinced that nothing trial counsel could say would make this court believe that it was sound trial strategy to offer the prior conviction under the circumstances here. We are able to determine from the statement of facts from the trial and pre-trial proceedings that counsel rendered ineffective assistance of counsel. Thus, we find the record sufficient in this case.

Appellant argues that counsel's performance was deficient because there was no need for him to elicit the testimony regarding the murder conviction from him, and doing so diminished Stone's credibility and alibi defense. Appellant contends that while it is a common trial tactic, when a defendant who has been earlier convicted of a felony and is going to testify, to admit to his prior conviction before the state hammers him with it on cross examination, such reasoning does not apply here in that the State could not have used the conviction to impeach his credibility, because the conviction is too remote in time under Texas Rule of Evidence 609(b). Rule 609 generally allows one's credibility to be attacked by evidence that the witness has been convicted of a felony or a crime involving moral turpitude. TEX. R. EVID. 609(b) (Vernon supp.2000). However, evidence of a conviction is not admissible under this rule if the date of conviction or the release of the witness from confinement is more than ten years earlier, whichever is the later date. *Id.* The court can determine, in the interest of justice, that the probative value of the conviction substantially outweighs its prejudicial effect. *Id.*

This trial took place in October of 1997. Stone's murder conviction was in February of 1980, and he was paroled after serving five and one half years in prison. Although the precise date he was released from confinement is not reflected, computation indicates that it was in the fall of 1985, more than ten years earlier. It could not have been admitted to impeach him, absent a particularized finding by the judge.

The court had indicated earlier in the trial that evidence of the prior conviction would not be allowed during the guilt portion. No pre-trial ruling was sought, nor was the issue raised by appellant's counsel in a motion in limine. However, the following exchange occurred during voir dire:

Prosecutor: In this case, because of the circumstances of this delivery, the offense is a third-degree felony. Under Texas law a third degree felony is punishable from a minimum of two to a maximum of ten years in the penitentiary. There also may be a fine assessed.

Def. counsel: Your Honor, I am going to object at this time. May we approach the bench?

Court: Yes.

Def. counsel: Having come to the bench, I am either lodging an objection or, I believe more appropriately, asking that this Panel be released and a mistrial declared for my client. This jury has not been seated. It is my belief by telling the jury that under the circumstances of delivery that this is a third degree felony; that he is in effect telling the jury he is the one familiar with the penal laws of this State; that this gentleman has a prior

conviction and, Judge, that is improper at this time. That is the only way he can get there and I object.

Prosecutor: Well, Judge, a third degree felony is what is alleged in the indictment and I am entitled to question the Panel about the range of punishment alleged in the indictment. I can't help it if Mr. Stone has a prior felony, but if this were a non-state jail felony and enhanced by this I would be entitled to ask them about the enhanced penalty as well.

Court: Well, that is an interesting question. Unfortunately I can't answer it because ... tried for state jail.[sic] Is that like a DWI where the prior is part of the instant offense or is it—

Prosecutor: I believe it is a punishment issue, Your Honor.

Court: If it is just a punishment issue, then you shouldn't have told them.

Prosecutor: I am entitled to ask them about an enhanced penalty. If this were a second degree felony and he had one prior felony, I would be entitled to ask them about the punishment range on a first degree felony.

Def. counsel: You have to keep it within the range of two to ten; you can't explain to them how you got there.

Prosecutor: I didn't. I didn't mention a prior.

Court: You probably need to tell them that—

Prosecutor: Mr. Morris can do whatever he wants to, Your Honor, but I am saying two to ten.

Court: I just want to make sure the prior is a punishment issue. The prior is not going to be read to the Jury after while [sic], unless they find him guilty.

Prosecutor: Unless the Court instructs us to prove it up on guilt or innocence, I believe it is a punishment issue.

Court: I agree with you.

Def. counsel: It may come in on the Defense's case but we don't know about that yet.

Court: I am not going to grant your request for a mistrial and I will overrule the objection, but I want to make sure it is a punishment issue and not guilt or innocence. Usually that is not how you explain it to them, but if that is how you want to—

Prosecutor: I don't want to try to explain the range of punishment to state jail; if he wants to, he can go ahead.

Court: All right.

We hold that under the facts of this case, counsel's decision to elicit testimony regarding the prior murder conviction cannot be considered part of a reasonable trial strategy. We believe that where, as here, the record affirmatively demonstrates that counsel took some action in defending his client that no reasonably competent attorney could have believed constituted sound trial strategy, the defendant has shown he received ineffective assistance of counsel. We hold, therefore, that counsel's performance in eliciting that testimony was deficient representation that fell below the objective standard of reasonableness. *See Thompson,* 9 S.W.3d at 812; *McFarland,* 928 S.W.2d at 500.[1]

▇▇▇ The second prong of the *Strickland* test for ineffective assistance of counsel requires that we determine whether Stone has shown a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *See Thompson,* 9 S.W.3d at 812; *McFarland,* 928 S.W.2d at 500. The unnecessary placing before the jury of Stone's conviction of murder harmed his defense in two ways: (1) it diminished his credibility when credibility was critical—his presentation of his alibi defense; and (2) it gave substance to his threats to kill the prosecution witnesses. One should be tried for only the crime for

---

1. Trial counsel served as Stone's initial appellate counsel and selflessly raised the issue of his own ineffectiveness. Subsequently, new counsel was appointed for the appellant.

which he is indicted, and not for being a criminal generally. Stone was deprived of a fair trial with a reliable result. *See* *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Rosales v. State,* 4 S.W.3d 228, 231 (Tex. Crim.App.1999). Accordingly, we find Stone received ineffective assistance of counsel and reverse and remand this cause to the trial court. Because we reverse pursuant to appellant's first point of error, we do not reach the merits of his second point.