

NUMBERS 13-12-00396-CR & 13-12-00397-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOHN BOURROUS,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

**On appeal from the 130th District Court
of Matagorda County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

By three issues, appellant, John Bourrous challenges his convictions for two counts of aggravated sexual assault of a child, *see* TEX. PENAL CODE ANN. § 22.021 (West 2011), one count of attempted aggravated sexual assault of a child, a second-degree felony, *see id.* § 15.01 (West 2011), and one count of indecency with a child, a first-degree felony. *See id.* § 21.11 (West 2011). We affirm.

## I. BACKGROUND

A Matagorda County grand jury indicted Bourrous on three counts of aggravated sexual assault of K.P., a child younger than fourteen years of age (Cause No. 13-12-396-CR), and on one count of indecency with a child, K.P. (Cause No. 13-12-397-CR). Bourrous pleaded not guilty to the charges and was tried by a jury.

The allegations against Bourrous stem from an outcry made by Bourrous's ex-girlfriend's daughter, K.P., who was age eighteen at the time of trial. K.P. testified that Bourrous's assaults began in 2003, when she was ten years old. After K.P.'s mother, M.P., and father, A.P., divorced, M.P., K.P., and brother, S.P. moved into Bourrous's home in El Maton, Texas.

K.P. recalled that the first incident of abuse began one day when K.P. went to talk to Bourrous in his bedroom, after having "a really bad day." K.P. stated that no one was around the house and Bourrous was the only person with whom she could talk to. K.P. stated that she laid in bed with Bourrous to talk to him, when he began to touch her. K.P. testified that Bourrous "lifted [her nightgown] up," pulled her panties to the side, and began touching her vagina. K.P. stated that she "didn't know what to think of it" and after it happened, ran to her bedroom and hid in the closet. K.P. recalled that at age eleven, Bourrous forced her to sit on the toilet, while he stood in front of her, and she performed oral sex on him.

K.P. also stated that Bourrous would sometimes enter her bedroom before she would nap or go to sleep for the night, lie in bed with her, and penetrate her vagina with his fingers or force her to masturbate him. According to K.P., sometimes Bourrous would ejaculate in front her, and other times he did not. K.P. specifically recalled a trip

2

that she and Bourrous took to Lufkin to visit his family. K.P. stated that on that trip, Bourrous made her masturbate him one day and perform oral sex on him the next day. K.P. also related that during the Lufkin trip, Bourrous attempted to touch her vagina in the swimming pool.

K.P. recalled a final event that took place when she was fourteen. K.P. stated that Bourrous attempted to play pornography in his bedroom for her, pushed her to the bed, and attempted to take her clothes off. K.P. stated that Bourrous was naked during the ordeal. K.P. stated that she kicked, screamed, and did everything possible to leave, but could not. Eventually, Bourrous stopped and told her that his actions were "going to teach [K.P.] to say 'no' to boys." K.P. recalled that that was the final time Bourrous assaulted her, but prior to that, K.P. stated that Bourrous's assaults would be "almost every day," but sometimes three or four weeks would pass without any.

The jury returned a verdict of guilty on two counts (Counts I and II) of aggravated sexual assault, one count of attempted aggravated sexual assault (lesser-included offense to Count III), and indecency with a child. The jury assessed Bourrous's punishment at ninety-nine years' imprisonment for the two aggravated sexual assault charges, twenty years' imprisonment for the attempted aggravated sexual assault offense, and twenty years' for the indecency with a child conviction. The trial court ordered that these sentences run concurrently. This appeal followed.

## II.    PROSECUTOR'S ARGUMENTS

By his first issue, Bourrous asserts that the prosecutor violated his federal and state constitutional rights, as well as his statutory right to silence.

### A.    Applicable Law and Standard of Review

3

Texas law states that any defendant in a criminal action shall be permitted to testify on his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause. TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005); *see Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) ("It is settled law that neither the trial judge nor the prosecution may comment on the defendant's failure to testify, and that any such comment violates the Fifth Amendment privilege against self-incrimination.").

> To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character. *Cruz*, 225 S.W.3d at 548 (citing *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001)); *see Cook v. State*, 702 S.W.2d 597, 599 (Tex. Crim. App. 1984).

## B.    Discussion

The basis for Bourrous's argument on this issue stems from the following comments made by the State during closing arguments:

> STATE:    In the instructions it tells you that you are not to consider the failure of the defendant to testify. What that means is that I can't get up here and tell you that because a person doesn't testify that it means that they're guilty. I can't tell you there's any meaning whatsoever to the lack of a person testifying. And it is just as appropriate to tell you that when a person doesn't testify, that doesn't mean they had anything meaningful to say to start with. So, as defense counsel stands up here and tries to bootstrap someone's silence into, well, perhaps the State didn't have enough proof and, so, there's no reason for my defendant to testify, that is simply wrong.

4

> The court's charge tells you that you do not consider a person's failure to testify either for or against them. It is meaningless. What you look at is the evidence you have.

In order to preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Our review of the record shows no objection from Bourrous's counsel on this argument. Accordingly, error was not preserved.

Even assuming without deciding that error was preserved, we conclude that the prosecutor's comments were not manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *See Cruz*, 225 S.W.3d at 548. Instead, the prosecutor's comments were a response to Bourrous's counsel's argument made during his closing argument:

> [DEFENSE COUNSEL]: But how does a man defend himself when somebody says I did something?
>
> Did you hear one date, one date where Mr.—if you want—if he testified what would he testify to? He told the detective and he went down there with his lawyer and he said, "I didn't do this. What evidence do you have against me?"

Later, Bourrous's counsel made this argument:

> [DEFENSE COUNSEL]: I think there's not a [sic] one of us now that would wonder why he doesn't testify. Why should he? He doesn't have to.

Proper jury argument includes answering jury argument made by opposing counsel during the argument itself. *Brown v. State*, 270 S.W.3d 564, 571 (Tex. Crim. App. 2008). In this case, the State was responding to defense counsel's rhetorical question about what Bourrous would have testified to had he testified, and why Bourrous did not testify. Accordingly, the State's argument in response was appropriately

5

allowed not erroneous.  *See id.*

Bourrous's first issue is overruled.

### III.  **INEFFECTIVE ASSISTANCE OF COUNSEL**

By his second issue, Bourrous asserts that his trial counsel rendered ineffective assistance at the guilt-innocence phase of his trial.

### A.  **Applicable Law and Standard of Review**

In *Strickland v. Washington*, 466 U.S. 668, 694 (1984), the United States Supreme Court articulated a two-prong test to be used when analyzing a claim of ineffective assistance of counsel.  To have his conviction reversed on the grounds of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant.  *Id.* at 687; *see also Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).   Unless the appellant makes both showings, it cannot be said that his conviction is rendered unreliable by a breakdown in the adversarial process.  *Andrews*, 159 S.W.3d at 101 (citing *Strickland*, 466 U.S. at 687).

Review of counsel's performance is highly deferential, and we must make every effort to eliminate the distorting effects of hindsight.  *See Strickland*, 466 U.S. at 689; *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).  A strong presumption exists that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome that presumption by a preponderance of the evidence.  *See Strickland*, 466 U.S. at 689; *see Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984) (en banc).  Our assessment of a claim of ineffective assistance must be made according to the facts of each case.  *Thompson v. State*, 9

6

S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* While the Texas Court of Criminal Appeals has been "hesitant" to designate any error as per se ineffective assistance of counsel as a matter of law, it has nevertheless concluded that a "single egregious error of omission or commission" by counsel can constitute ineffective assistance. *See id.* Generally, trial counsel should be afforded an opportunity to explain his or her actions before being denounced as defective. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

**B.     Discussion**

Bourrous first argues that his trial counsel provided ineffective assistance by failing to object to "numerous inadmissible extraneous offenses"—specifically, allegations of abuse made by K.P. that were not stated in the indictment. The record is silent on this issue was to why counsel chose not to object or failed to object to K.P.'s purported extraneous offenses. Therefore, Bourrous failed to rebut the presumption that counsel's failure to object was a reasonable decision. *See Thompson*, 9 S.W.3d at 814. Furthermore, even had Bourrous's counsel objected, the likelihood of success of such an objection is unclear, since courts give wide latitude to testimony given by child victims of sexual abuse. *See Ketchum v. State*, 199 S.W.3d 581, 590 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Villalon v. State*, 791 S.W.2d 130, 133–34 (Tex. Crim. App. 1990)).

Next, Bourrous argues that his trial counsel was ineffective in failing to force the State to elect which instance of sexual misconduct it relied upon for a conviction. *See Phillips v. State*, 193 S.W.3d 904, 909 (Tex. Crim. App. 2006). Again, the record is silent as to why counsel did not file a motion that required the State to elect which instance it relied upon for a conviction. We also note that Bourrous filed a motion for new trial and held a hearing, in which Bourrous's trial counsel was called as a witness, yet no record was developed as to this complaint. "The reason an adequate record is so important . . . is because in the absence of a record, the court will indulge strong presumptions that counsel's performance was a part of trial strategy, and typically will not second-guess a matter of trial strategy." *Stone v. State*, 17 S.W.3d 348, 350 (Tex. App.—Corpus Christi 2000, pet. ref'd) (citing *Young v. State*, 991 S.W.2d 835, 837–38 (Tex. Crim. App. 1999) (en banc)). Without more, we decline to second-guess Bourrous's trail counsel's trial strategy here.

Finally, Bourrous argues that trial counsel failed to object to numerous instances of improper closing argument by the State. Once again, the record is silent as to why counsel chose not to object or failed to object to the prosecutor's purported improper arguments. Specifically, Bourrous takes issue with the following six arguments made by the State:

(1) The world that we know exist [sic] is that stranger sexual assaults of children are—they make up no caseload in a prosecutor's office. I've seen one in 18 years. The caseload that we have in our office is a caseload with this environment where the perpetrator is somebody who is in the home or has access to the children, and you are going to find an inattentive parent or parents.

(2) And the next thing we look for is grooming. Tell me what that is, grooming. Grooming means making a child—getting a child to the point where you can do these types of things to them and they're not going to tell about it. They're going to accept it. They're going to allow you to do those types of things.

8

They're not going to tell anybody about it either because they're afraid or because there's no else to tell. It comes in all different situations where maybe they're given a present, maybe they're scared into it, maybe because it's just a child who under any circumstances wouldn't be a child who would tell. But grooming is real big and going along with that is a child who won't tell.

(3)     All of that consistent with what he know about the grooming process and about kids who won't tell.

(4)     And one of the biggest things that we look for are the depth of the statements, one of the very biggest things. People who do this for a living and interview children for a living will tell you that's one of the most critical things they look for when dealing with child sexual assault, and that is tell me about the depth of that.

(5)     And then he continued with the grooming.

(6)     In the instructions it tells you that you are not to consider the failure of the defendant to testify. What that means is that I can't get up here and tell you that because a person doesn't testify that it means that they're guilty. I can't tell you there's any meaning whatsoever to the lack of a person testifying. And it is just as appropriate to tell you that when a person doesn't testify, that doesn't mean they had anything meaningful to say to start with. So, as defense counsel stands up here and tries to bootstrap someone's silence into, well, perhaps the State didn't have enough proof and, so, there's no reason for my defendant to testify, that is simply wrong. The court's charge tells you that you do not consider a person's failure to testify either for or against them. It is meaningless. What you look at is the evidence you have.

Proper prosecutorial argument should generally fall within one of the following categories: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to argument of opposing counsel, and (4) pleas for law enforcement. *See Brown*, 270 S.W.3d at 571; *Cantu v. State*, 944 S.W.2d 669, 671 (Tex. App.—Corpus Christi 1997, pet. ref'd). After examining the record, we conclude that argument 1 is a reasonable deduction from the evidence, and argument 6 is an answer to argument of opposing counsel. Arguments 2, 3, and 4 could potentially be outside the scope of the four general categories of prosecutorial argument and amount to error. However, even assuming *arguendo* that those arguments were improper,

9

Bourrous has failed to show how his trial counsel's failure to object to those arguments prejudiced him. *See Strickland*, 466 U.S. at 687.

Accordingly, based upon the facts of this case and the entire record, we conclude that Bourrous failed to meet his burden to show that his trial counsel provided ineffective assistance. *See Thompson*, 9 S.W.3d at 813. Bourrous's second issue is overruled.

## IV. DOUBLE JEOPARDY

By his final issue, Bourrous asserts that his conviction under Count II of his indictment violates the Double Jeopardy clause of the United States Constitution because it was incident to, or subsumed by, the aggravated sexual assault by penetration offense as alleged in Count I of the indictment.

### A. Standard of Review

The protections afforded by the Double Jeopardy Clause of the Fifth Amendment were extended to state criminal prosecutions through the Due Process Clause of the Fourteenth Amendment. *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). The Double Jeopardy Clause protects criminal defendants from three things: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Id.* In our review, we must determine whether the defendant's acts constitute a single violation of the charged offense or two separate violations of the same criminal statute. *Id.* In order to determine if the Double Jeopardy Clause's prohibition against multiple punishments for the same offense has been violated, we assess whether a defendant "is convicted of more offenses than the legislature intended." *Id.*

## B. Discussion

The question of whether a defendant may be subjected to multiple prosecutions under penal code section 22.021 was answered in *Vick v. State*. 991 S.W.2d 830, 832–34 (Tex. Crim. App. 1999). In *Vick*, the court of criminal appeals held that section 22.021 is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types and intended that each separately described conduct constitutes a separate statutory offense. *Id.* at 832. Additionally, the statute expressly and impliedly separates the sections by "or," which is some indication that any one of the proscribed conduct provisions constitutes an offense. *Id.* at 832–33. Furthermore,

> The statute criminalizes many types of sexually assaultive conduct with a child. Yet, each section usually entails different and separate acts to commit the various, prohibited conduct. This specificity reflects the legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct.

*Id.*

In this case, different conduct was charged in each count of aggravated sexual assault. Under Count I, Bourrous was charged with penetration of K.P.'s mouth by his sexual organ, *see* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii); and under Count II, Bourrous was charged with causing K.P.'s mouth to contact his sexual organ. *See id.* § 22.021(a)(1)(B)(v). Therefore, Count II's conduct constituted a separate and distinct statutory offense from Count I and cannot have been incident to, or subsumed by Count I. *See Vick*, 991 S.W.2d at 833. Accordingly, because we conclude that Count I and Count II are alleged violations of separate and distinct statutory aggravated sexual assault offenses and that those alleged offenses involved separate and distinct acts, our inquiry for double jeopardy purposes ends. *See id.* Bourrous's final issue is overruled.

11

## V. CONCLUSION

We affirm the trial court's judgments.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
5th day of September, 2013.