# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00628-CR

**Edwrick Quentria Bass, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 74201, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Edwrick Quentria Bass was charged with felony assault family violence, and the indictment also alleged that Bass had previously been convicted on at least one previous occasion of assault family violence. *See* Tex. Penal Code § 22.01(a) (setting out elements of offense of assault), (b)(2) (specifying that assault is third-degree felony if offense is committed against person whose relationship with defendant is described by Family Code and if defendant has previously been convicted of assaulting similarly described victim). The alleged victim was Kewanee Simmons, whom Bass was alleged to have had a dating relationship with in the past. Prior to trial, the State filed a notice of its intent to seek enhanced punishment on the ground that Bass had allegedly been previously convicted of a felony offense for assault family violence, which was alleged to have occurred several years after the previous convictions described above. At the end of the guilt-or-innocence phase of the trial, the jury found Bass guilty of the charged offense. Bass elected to

have the district court assess his punishment, and he entered a plea of true to the felony-enhancement allegation. *See id.* § 12.42(a) (enhancing punishment range for third-degree felony to that of second-degree felony if defendant has previously been convicted of another felony offense); *see also id.* § 12.33 (listing permissible punishment range for second-degree felony). At the end of the punishment phase, the district court imposed a sentence of eleven years' imprisonment. In a single issue on appeal, Bass contends that his trial attorney provided ineffective assistance of counsel. We will modify the district court's judgment of conviction to correct a clerical error and affirm the district court's judgment of conviction as modified.

## DISCUSSION

**Effectiveness of Counsel**

In his sole issue on appeal, Bass contends that his trial attorney "rendered ineffective assistance of counsel by producing a sealed envelope from the Bell County Sheriff's Department, without first ascertaining the nature of the contents, and the sealed envelope contained a Texas Department of Criminal Justice identity card showing [that Bass] was a convicted felon." The incident at issue occurred during the testimony of an employee for the Bell County Jail, Dwight Morrison. In his testimony, Morrison discussed what happens to an inmate's property when he is admitted into jail. Further, Morrison identified the bag containing Bass's personal property. Inside the bag was an envelope that was sealed and had Bass's name on it, and Morrison explained that envelopes like that one are used to store items of value (e.g., jewelry). In addition, Morrison testified that money that is collected from an individual after his arrest is either transferred to an inmate's commissary account or placed in an envelope like the one that he had been discussing until "another

2

officer could come in and place[]" it in the inmate's account. Further, Morrison agreed that "if there had been money brought to the jail with Mr. Bass from [the] Killeen Police Department, there would be a record of it" and explained that there was no record of any money being collected from Bass. During Morrison's testimony, Bass's attorney instructed Morrison to open up the envelope. Inside the envelope was a Texas Department of Criminal Justice offender identification card with Bass's name and other personal information on it along with one penny. On cross-examination, Morrison explained that identification cards are given to anyone who is sent to prison or a state jail and that the issuance of a card to Bass indicated that he had previously been to either a state jail or a prison.

On appeal, Bass contends that there could have been no sound trial strategy for deliberately introducing evidence showing that he had previously been imprisoned. Alternatively, Bass asserts that if his attorney introduced the evidence inadvertently, this would also establish ineffective assistance because it would mean that his attorney failed to investigate "the contents of the envelope prior to having it opened in open court." In addition, Bass argues that he was harmed by his attorney's actions because he had chosen not to testify and because his prior convictions would therefore not have been admitted during his testimony. Relatedly, Bass asserts that his attorney's actions harmed him because it undermined his credibility before the jury. Specifically, Bass notes that evidence had already been presented showing that Simmons had been convicted of two prior felonies and argues that by presenting evidence of his offender identification card, his attorney put him "on the same level as the complainant as a convicted felon."

To succeed on an ineffectiveness claim, a defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional

3

assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). "[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Evaluations of effectiveness are based on "the totality of the representation," *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider "cumulative effect" of counsel's deficiencies), and allegations of ineffectiveness must be firmly established by the record, *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Furthermore, even though a defendant is not entitled to representation that is error-free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136.

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Mallett*, 65 S.W.3d at 63 (stating that "[i]n the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Goodspeed*, 187 S.W.3d at 392 (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). If that opportunity has not been provided, as in this case, an

4

appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia*, 57 S.W.3d at 440.

As a preliminary matter, we note that the record does not contain any information regarding why Bass's attorney chose to have Morrison open the envelope in this case, *cf. Mallett*, 65 S.W.3d at 64-65 (stating that "speculation on counsel's strategy is immaterial to our determination that counsel has not been proven ineffective" when record is silent), nor does the record establish whether or not Bass's attorney was aware of what was inside the envelope.[1] However, the record does indicate that part of Bass's attorney's strategy was to undermine the credibility of Simmons. Specifically, Simmons told the police and testified during the trial that Bass stole $400 from her during the alleged incident, and Bass's attorney emphasized during his opening statement that Bass only had his "lucky penny" and around $20 on him when he was arrested. In light of that defensive strategy, Bass's attorney could have concluded that having Morrison go through the personal items that were collected from Bass when he was arrested in order to undermine Simmons's credibility by showing that Bass did not have $400 on him was worth the risk of having the jury learn that Bass had previously served time in a prison or in a state jail. *Cf. Blount v. State*, 64 S.W.3d 451, 455 (Tex. App.—Texarkana 2001, no pet.) (explaining that even if "counsel's actions . . . seem imprudent in hindsight, it is not for us to second-guess her strategy"). Moreover, when weighing the potential benefits against the potential harm stemming from Morrison's

---

[1] The record does reveal that Bass's attorney was able to examine Bass's property before trial, but nothing in the record shows whether he opened the envelope at issue.

testimony, Bass's attorney could have considered that the State had already introduced in its case in chief the two prior judgments of conviction for the offenses that were alleged in the indictment and surmised that any potential impact on the jury stemming from the fact that Bass had previously been given an offender identification card was blunted by the evidence from the State concerning his prior convictions.[2]

For all of these reasons, we must conclude that the record is not sufficiently developed to evaluate whether Bass's attorney's decision to have Morrison go through Bass's personal property that was collected when he was arrested, including his identification card, was part of reasonable trial strategy because his attorney has not "been given an opportunity to

---

[2] When presenting this issue on appeal, Bass primarily relies on *Stone v. State*, 17 S.W.3d 348 (Tex. App.—Corpus Christi 2000, pet. ref'd). However, we believe that Bass's reliance on *Stone* is misplaced. In that case, the trial court determined that the State would not be allowed to present evidence in the first phase of the trial regarding Stone's remote prior conviction for murder, but when Stone testified during the trial, his attorney asked him about his prior murder conviction anyway. *Id.* at 349. On appeal, the reviewing court determined that Stone received ineffective assistance of counsel because "no reasonably competent attorney could have believed that introducing that evidence amounted to sound trial strategy." *Id.* Further, the appellate court determined that Stone's lawyer's decision to mention the prior conviction undermined Stone's credibility when it was crucial to his alibi defense and "gave substance to his threats to kill the prosecution witnesses." *Id.* at 353.

As an initial matter, we note that there was no similar ruling in the present case that expressly prohibited the State from admitting evidence of Bass's prior convictions. Moreover, unlike in *Stone*, as we discussed above, the decision by Bass's attorney to have Morrison open the envelope may have possibly been part of a sound trial strategy. *Cf. Blount v. State*, 64 S.W.3d 451, 454-55 (Tex. App.—Texarkana 2001, no pet.) (distinguishing case from *Stone* because reviewing court could determine possible strategy to discredit victim's mother by asking victim's mother why she would place her child near defendant when she was aware of prior allegations of child abuse as part of trial strategy to show that victim fabricated claim or was abused by someone else). Furthermore, unlike in *Stone*, no details of the nature of Bass's prior offense and incarceration were admitted through the testimony of Morrison. Finally, to the extent that *Stone* could be read as having any applicability to this case, we note that the analysis from *Stone* is not binding on this Court.

6

respond to" the claims, *see Goodspeed*, 187 S.W.3d at 392, 394, that Bass has failed to overcome the presumption of reasonably professional assistance, and that Bass has not demonstrated that his trial attorney's alleged mistake was so outrageous that no competent attorney would have made that mistake.[3]

Having determined that Bass has not shown that his trial attorney provided ineffective assistance of counsel on the grounds alleged above, we need not further address the matter, but we do emphasize that ineffectiveness challenges are considered in light of "the totality of the representation" provided by the attorney. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Simmons v. State*, Nos. 03-11-00229-CR, -00230-CR, 2012 WL 3629864, at *4 (Tex. App.—Austin Aug. 22, 2012, pet. ref'd) (mem. op., not designated for publication) (determining that "[t]he critical weakness" in ineffectiveness claim was "its failure to consider the

---

[3] Although we need not reach the issue, we also believe that Bass has not established that there is a reasonable probability that the results of the proceeding would have been different if the jury was not made aware of the existence of the identification card. As discussed earlier, no information regarding the offense for which he received the card was presented to the jury, and the State did not discuss the existence of the card except briefly during Morrison's testimony. Moreover, several police officers testified that they responded to the scene of a 911 call and saw Bass and Simmons interacting, and those witnesses also testified regarding the serious injuries that they observed when talking with Simmons and regarding the condition of Simmons's apartment where the offense was alleged to have occurred. In addition, Simmons's medical records and numerous photographs chronicling those injuries were admitted into evidence. Finally, evidence was presented showing that Bass had assaulted Simmons in the past. *Cf. Lewis v. State*, No. 01-02-01155-CR, 2003 WL 22916637, at *6 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (mem. op., not designated for publication) (explaining in reference to 403 objection that "although the TDCJ identification card also suggested that appellant had engaged in extraneous misconduct, the State did not focus on this point" or "use the TDCJ card to inflame the minds of the jury," that card "did not state the crime for which appellant was convicted or the date of his conviction," and that "[t]he testimony concerning the card was brief and only in the context of what forms of identification were found in the residence").

7

totality of trial counsel's representation"). Moreover, we note that during voir dire Bass's attorney discussed the State's burden, went over the defendant's right to a jury trial, talked about the jury-deliberation process, and warned the panel members to vote their conscience and not how another juror might want them to vote. In addition, his attorney entered into an agreement with the State to strike several panelists for cause. During his opening statement, Bass's attorney suggested that Simmons had several felony convictions; mentioned how although Simmons asserted that Bass had stolen money from her, the police did not find any money on Bass shortly after the alleged incident; emphasized how although Simmons was bleeding, there was no blood on any of Bass's clothes or any physical indication that Bass had been involved in an altercation; and denied that Bass and Simmons were in a dating relationship. In a hearing outside the presence of the jury, Bass's attorney moved to exclude evidence of his prior convictions and bad acts under Rule of Evidence 404 and cross-examined the witnesses that the State called during that hearing to discuss the prior convictions and bad acts. *See* Tex. R. Evid. 404 (prohibiting, in general, evidence of prior crime or bad act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). During the trial, Bass's attorney cross-examined the State's witnesses, asked the State's witnesses about whether they found any money on Bass when they arrested him and about whether they saw any injuries to Bass or any blood on him, questioned Simmons about her relationship with Bass and about whether they were in fact in a dating relationship, and inquired into Simmons's four felony and thirteen misdemeanor convictions. In his closing arguments during the guilt-or-innocence phase, Bass's attorney encouraged the jury members to make up their own mind and to not be pressured into voting a certain way, suggested that Bass

8

and Simmons did not have the type of relationship alleged in the indictment in this case, emphasized the State's burden of establishing all of the elements beyond a reasonable doubt, and urged that there was reasonable doubt in this case. During his closing argument in the punishment phase, Bass's attorney noted that Bass's mother has agreed to allow Bass to live with her after he finishes serving his sentence, mentioned that Bass had been diagnosed as bipolar, discussed Bass's criminal history but urged that his use of drugs was the source of his past misdeeds, and requested that the district court assess the minimum sentence. In the absence of further information, we conclude that the totality of the representation suggests that Bass was provided with effective assistance of counsel.

For all of these reasons, we overrule Bass's first issue on appeal.

**Clerical Error in the Judgment**

Although Bass does not raise this on appeal, we observe that the judgment of conviction in this case contains a clerical error. The judgment in this case reflects that the conviction was under subsection 22.01(b-1) of the Penal Code. *See* Tex. Penal Code § 22.01(b-1). That provision elevates the offense level for assault and explains that a person commits an offense if he assaults a victim whose relationship with him is governed by provisions of the Family Code, if he has previously been convicted of assaulting a victim with a similarly defined relationship, and if the offense at issue involves "impeding the normal breathing or circulation of the blood" of the victim "by applying pressure to the person's throat or neck or by blocking the persons's nose or mouth." *Id.* Although evidence was presented during the trial indicating that Bass had strangled Simmons during the assault, the indictment did not allege strangulation as an element of the charged offense and instead alleged that Bass "did then and there intentionally, knowingly, and recklessly cause

9

bodily injury to . . . Simmons . . . by striking her, dragging her body, kicking her or causing her head to strike the floor" and that Bass had previously committed the offense of assault family violence. Accordingly, the alleged offense was governed by subsection 22.01(b)(2) of the Penal Code, which elevates the offense level for assault and provides that an individual commits an offense if he assaults someone whose relationship with him is described by provisions of the Family Code and if he previously committed assault against someone with whom he had a similarly defined relationship. *See id.* § 22.01(b)(2). This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). For these reasons, we modify the judgment of conviction to reflect that Bass was convicted under subsection 22.01(b)(2) of the Penal Code.

## CONCLUSION

Having modified the judgment of conviction and having overruled Bass's sole issue on appeal, we affirm the district court's judgment of conviction as modified.

_____

David Puryear, Justice

Before Chief Justice Rose and Justices Puryear and Pemberton

Modified and, as Modified, Affirmed

Filed: June 8, 2016

Do Not Publish

10