ACCEPTED
13-14-00465-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
3/18/2015 10:55:14 AM
DORIAN RAMIREZ
CLERK

## NO.  13-14-00465-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF
TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/18/2015 10:55:14 AM
DORIAN E. RAMIREZ
Clerk

**ABELINO HERNANDEZ,**
                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**
                    **Appellee.**

On Appeal from the
24th Judicial District Court
Of Victoria County, Texas
Cause No. 14-04-27866-A

## BRIEF FOR THE STATE OF TEXAS

**STEPHEN B. TYLER**
Criminal District Attorney
Victoria County, Texas

**BRENDAN WYATT GUY**
Assistant Criminal District Attorney
Victoria County, Texas
205 N. Bridge St. Ste. 301,
Victoria, Texas 77901-6576
bguy@vctx.org
(361) 575-0468
(361) 570-1041 (fax)
State Bar No. 24034895

Attorneys for the State of Texas

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

**PAGE (S)**

**TABLE OF CONTENTS** ...............................................................................ii

**INDEX OF AUTHORITIES**..............................................................iii-iv

**STATEMENT OF THE FACTS** ..........................................................1-8

**SUMMARY OF ARGUMENT**..............................................................8-9

**ARGUMENT**......................................................................................10-26

   I.  **The Appellant waived any objection to the admission of the AFIS related evidence by failing to timely object at trial** ................................10-13

  II.  **The AFIS related evidence was neither irrelevant nor unfairly prejudicial**........................................13-23

 III.  **Any error from the admission of the AFIS evidence was harmless**..............................................23-26

**PRAYER**............................................................................................ 27

**SIGNATURE**..................................................................................... 27

**CERTIFICATE OF COMPLIANCE** ................................................. 28

**CERTIFICATE OF SERVICE** .......................................................... 29

# INDEX OF AUTHORITIES

## Texas Cases

*Bevill v. State,* 573 S.W. 2d 781 (Tex. Crim. App. 1978).......................21

*Casey v. State,* 215 S.W. 3d 870 (Tex. Crim. App. 2007) ...............16, 23

*Dixon v. State,* 2 S.W. 3d 263 (Tex. Crim. App. 1998)..........................10

*Ethington v. State,* 819 S.W.2d 854 (Tex. Crim. App. 1991) ...............10

*Gigliobianco v. State,* 210 S.W. 3d 637 ...............................................17-18
(Tex. Crim. App. 2006).......................................................................21-22

*Ketchum v. State,* 199 S.W. 3d 581
(Tex. App.-Corpus Christi 2006, pet. ref'd) .........................................23

*Lagrone v. State,* 942 S.W. 2d 602 (Tex. Crim. App. 1997) .................12

*Marini v. State,* 593 S.W. 2d 709 (Tex. Crim. App. 1980).....................10

*Martinez v. State*, 131 S.W.3d 22
(Tex. App.—San Antonio 2003, no pet)................................................12

*Mata v. State,* No. 05-05-00504-CR, 2007 WL 882439
(Tex. App.-Dallas 2007, pet. ref'd)
(not designated for publication) ........................................................18-19

*Montgomery v. State,* 810 S.W. 2d 372 (Tex. Crim. App. 1990)..........13

*Morales v. State,* 32 S.W.3d 862 (Tex.Crim.App.2000)........................13

*Mozon v. State,* 991 S.W. 2d  841 (Tex. Crim. App. 2004)...................17

*Nino v. State*, 223 S.W.3d 749
(Tex. App.—Houston [14th Dist.] 2007, no pet)...................................12

*Stone v. State,* **17 S.W. 3d 348
(Tex. App.-Corpus Christi 2000, pet. ref'd)** ........................................... **15**

*Thrift v. State,* **176 S.W. 3d 221 (Tex. Crim. App. 2005)** ...................... **20**

## Texas Rules

**TEX. R. APP. 9.4**.................................................................... **28**

**TEX. R. APP. 33.1**.................................................................. **10**

**TEX. R. APP. 44.2**.................................................................. **23**

**TEX. R. EVID. 403** ................................................................ **16**

**NO. 13-14-00465-CR**

IN THE COURT OF APPEALS
FOR THE THIRTEEN DISTRICT OF TEXAS
AT CORPUS CHRISTI

ABELINO HERNANDEZ…..…………………………………..Appelant

v.

THE STATE OF TEXAS,…..…………………………………...Appellee

\* \* \* \* \*

**STATE'S BRIEF ON THE MERITS**

\* \* \* \* \*

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, THE STATE OF TEXAS**,** by and through her Criminal District Attorney, Stephen B. Tyler, and as Appellee in the above numbered and entitled cause, and files this the Appellee's brief showing:

**STATEMENT OF THE FACTS**

On April 3, 2014, Appellant was indicted for the offense of aggravated robbery. [CR-I-5].

Appellant's case was called for trial on August 11, 2014. [RR-IV-1]. During his voir dire, Appellant's attorney questioned the venire panel about the presumption of innocence. [RR-IV-132]. No member of the panel expressed any reservations about giving the Appellant the presumption of

innocence. [RR-IV-132] After the completion of voir dire, the trial judge gave the members of the jury instructions. [RR-IV-162-168]. These instructions included a direction that the jury was to follow the law given to them by the court and was not to indulge in guesswork or speculation. [RR-IV-163]. The trial court also instructed the jury that evidence consists only of the testimony of witnesses, and the exhibits admitted into evidence. *Id.*

The State's first witness at trial was the victim of the offense, Ms. Josefa Tamayo. [RR-V-15]. Ms. Tamayo testified to being robbed by a man in March of 2013 while she was working the late shift at a Stripes convenience store. [RR-V-18-20]. She characterized her assailant as heavy-set, about 5'5 in height, and with a thermal t-shirt covering his face. [RR-V-19-20]. She also established that her assailant had a knife in his hand while robbing her. [RR-V-21-22]. She then testified to seeing blood on the robber's fingers after he cut himself with his own knife, and that the robber dropped the knife when he fled the scene. [RR-V-22]. Ms. Tamayo also testified as to how the robber had cut himself while trying to open the cash register. [RR-V-31-32]. Ms. Tamayo then clarified that she was 5'5 in height, and the robber was "a little bit taller, not much" than her. [RR-V-32-33].

The State next called Sergeant Kelly Luther of the Victoria Police Department. [RR-V-39]. Sergeant Luther described being called out the night of the robbery to the robbery location where she observed both the knife and blood at the scene. [RR-V-43]. She specifically described finding blood on the door handle. [RR-V-44]. She then confirmed that the store video showed that robbery suspect having touched the door handle when he fled the location. [RR-V-45-46; State's Exhibit 15]. Sergeant Luther also described locating blood on the knife. [RR-V-46; State's Exhibit 8].

The State then called Officer Javier Guerrero. [RR-V-55]. Officer Guerrero also testified to being called out to the robbery location, where he observed blood on the door and blood on the knife. [RR-V-59]. He then explained the process by which he collected the blood from both the door and from the knife. [RR-V-59-63]. Officer Guerrero also established the chain of custody for the State's exhibits related to the blood samples he had collected [RR-V-64-72], and those exhibits were accepted into evidence. [RR-V-89; State's Exhibits 17, 17A, 17B, 18].

The State then called Officer Joshua Robinson. [RR-V-91]. Officer Robinson testified to being called to the robbery scene where he was responsible for collecting fingerprints. [RR-V-94]. Officer Robinson indicated finding possible prints on the door and the cash register drawer

pieces that were left at the store but stated he did not know how old those prints were. [RR-V-94]. Officer Robinson then testified that prints were lifted in this case, but that they did not match to anything. [RR-V-97].

After Officer Robinson's testimony was complete there was a lengthy bench conference concerning evidentiary issues. [RR-V-102-108]. Appellant did not raise any concern about evidence about the AFIS system being admitted during this conference and did not request any sort of motion in limine or running objection against such evidence. *Id.*

When trial before the jury resumed, the State called Detective Amy Grothe. [RR-V-108]. Detective Grothe testified to receiving an investigative lead that led her to request a buccal swab from the Appellant. [RR-V-112]. She also identified the Appellant in the courtroom. [RR-V-113]. Detective Grothe then indicated that the Appellant consented to giving a DNA sample, which was collected by another person, Holly Jedlicka. *Id.* Detective Grothe then established that the defendant was about 5'7 in height and weighed 200 pounds, and that he was living in Victoria, about 2 miles from the scene of the robbery, at the time of the robbery. [RR-V-114].

The State then called Holly Jedlicka, a Crime Scene Supervisor for the Victoria Police Department. [RR-V-114, 116]. Technician Jedlicka described taking a buccal swab from the Appellant on January 24, 2014.

[RR-V-119, 122]. She also explained that four fingerprint cards had been prepared with latent lifts on them as part of the investigation for this case. [RR-V-122].

The prosecutor then asked Technician Jedlicka about AFIS. *Id.* She replied that AFIS is the Automated Fingerprint Identification System, and that "every fingerprint known or unknown that we get comes through there." [RR-V-123]. She then further stated that once you are booked into jail your fingerprints automatically go into AFIS. *Id.* Neither the question asked by the prosecutor nor this answer were objected to by the defense. *Id.*

The prosecutor then asked if his fingerprints were in AFIS, and Technician Jedlicka indicated that as a state employee they would be in the system. *Id.* These questions were also asked and answered without any objection from the defense. *Id.*

The prosecutor then asked if AFIS contained the records not just of criminals but also of everyone that works for the state or has had background checks run. *Id.* Technician Jedlicka answered yes to this question as well. *Id.*

It was only after that answer that Appellant's attorney requested a bench conference with the judge. *Id.* At the bench conference Appellant's attorney indicated he objected because "we have crossed the line into the

jury thinking the prints that exist-". [RR-V-123]. Appellant's attorney did not finish his objection as the trial court overruled him. *Id.*

The prosecutor then asked Technician Jedlicka if the fingerprints collected in this case were compared against those in the AFIS database. [RR-V-124]. Technician Jedlicka indicated that was done by there was no match. *Id.* She then testified that the Appellant's own prints were also sent off to the Texas Department of Public Safety to be compared against the prints taken from the scene, and that again there was no match. *Id.* Technician Jedlicka then established that of the four prints collected from the robbery scene, DPS considered only one of them to be usable. *Id.* She also explained the difference between usable and unusable prints and established there was no way to tell how old the prints were. [RR-V-124-125].

Technician Jedlicka's testimony concerning the buccal swab would lead to it being admitted as State's Exhibit 19. [RR-V-125].

The State then called Ms. Lisa Harmon Baylor, a forensic scientist with the Texas Department of Public Safety crime laboratory in Corpus Christi. [RR-V-128, 130]. Ms. Baylor testified to performing a DNA analysis on State's Exhibits 17A and 17B. [RR-V-138]. She then established that the blood sample taken from the door, when compared to the

known sample taken from the Appellant, produced results that "an unrelated person at random could be the source of this DNA profile" at odds of "approximately one in 130.4 quintillion for Caucasians, one in 89.77 sextillion for blacks, and one in 739.6 quintillion for Hispanics." [RR-V-152; State's Exhibit 21]. Ms. Baylor further testified that such results meant to a reasonable degree of scientific certainty that the Appellant was the source of the blood found on the door. [RR-V-152]. Ms. Baylor also established that the concerning the blood sample taken from the knife, the odds of an unrelated person taken at random being the source of that sample was "one in 2.204 quintillion for Caucasians, one in 5.018 quintillion for blacks, and one in 15.93 quintillion for Hispanics" and that also was sufficient to establish to a reasonable degree of scientific certainty that the Appellant was the source of blood on the knife as well. [RR-V-154; State's Exhibit 21].

The court's charge to the jury included an instruction that the jury could not consider the fact that the defendant had been indicted as evidence against him. [CR-I-25].

The State's closing argument did not make any reference to the defendant's fingerprints being kept in AFIS. [RR-VI-25-33; 38-44.]

Appellant's closing argument extensively attacked how the State collected evidence in this case [RR-VI-35-37]. Appellant's closing argument also twice mentioned the State's failure to obtain fingerprints. [RR-VI-36-37].

On August 13, 2014, the jury found the Appellant guilty of aggravated robbery as alleged in the indictment. [CR-I-28; RR-VI-47]. The Appellant pled true to the sentence enhancements alleged against him and was sentenced to 30 years imprisonment. [CR-I-35-37].

## SUMMARY OF THE ARGUMENT

The Appellant waived any error to the admission of the evidence regarding the AFIS database by failing to timely object. Appellant did not object after the prosecutor first asked about AFIS or even after the witness first indicated that people who had been arrested were kept in the AFIS system, but instead only objected after several questions on this matter had already been asked and answered.

The AFIS related evidence was neither irrelevant nor unfairly prejudicial. The evidence was relevant both to help persuade the jury that the investigating officers had performed a thorough, competent investigation, utilizing every resource available to them, and as part of the State's efforts to pull the sting from it not obtaining any usable fingerprint

evidence in this case. Nor was the evidence unfairly prejudicial. The AFIS evidence had probative force, and the danger of it confusing, misleading, or inflaming the jury was very slight since the evidence at trial clearly established that it was not only suspected criminals that were in the AFIS database but also all State employees and everyone who had ever received a State background check. Nor did the State spend a substantial amount of time developing this evidence. As such the trial court acted well within its discretion in concluding the probative value of the AFIS evidence was not substantially outweighed by its danger of unfair prejudice, and that conclusion should be upheld.

In the alternative, even if the admission of the AFIS evidence was deemed to be error, that error would be harmless. The State had overwhelming evidence of Appellant's guilt, while the prejudicial impact of improper consideration of the AFIS evidence would be very slight, due to both the nature of that evidence and to the active steps the trial prosecutor took to minimize any improper consideration of the evidence. As such it is clear that any erroneous admission of the AFIS evidence would not have improperly affected the verdict in this case, which means any such error can be disregarded, and the conviction should be affirmed.

# **ARGUMENT**

## I. The Appellant waived any objection to the admission of the AFIS related evidence by failing to timely object at trial.

To preserve error for appellate review, the complaining party must make a timely objection. See Tex.R.App. P. 33.1(a); *Dixon v. State,* 2 S.W. 3d 263, 265 (Tex. Crim. App. 1998). The requirement of timeliness means the objection must be made at the earliest possible opportunity. *Marini v. State,* 593 S.W. 2d 709, 714 (Tex. Crim. App. 1980). If possible this should be done before the objectionable evidence is actually admitted, but if that is not possible than the objection must occur as soon as the objectionable nature of the evidence becomes apparent. See *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991).

In regards to the evidence concerning the Automated Fingerprint Identification System (AFIS), Appellant failed to make the required timely objection and thus waived any error as to the admission of that evidence. The trial record makes clear that neither the prosecutor's initial question of "And now can you explain to the jury what AFIS is real quick?" nor Technician Jedlicka's answer of:

> AFIS is the Automated Fingerprint Identification System
> It's for-it's ran through DPS and basically every
> fingerprint known or unknown that we get comes
> through there. Once your booked into any jail facility

your prints automatically go in there for comparison.

produced any sort of objection from the Appellant. [RR-V-122-123]. If the Appellant believes the testimony about AFIS is irrelevant (as he is now arguing) than that specific objection should have been lodged as soon as the prosecutor asked a question referencing AFIS. Likewise if the Appellant believes that the evidence about the AFIS database having information on people who have been jailed is unfairly prejudicial, then he should have objected as soon as the witness testified that anyone who was booked into a jail facility had their prints go into AFIS.

Appellant did not object to either the prosecutor's question about AFIS or the witnesses' answer. [RR-V-122-123]. The prosecutor then asked a second question about AFIS without objection, which the witness also answered without objection. [RR-V-123]. After which the prosecutor asked a third question about AFIS without objection, which the witness also answered in full, and only then did the Appellant request a bench conference where he registered an objection to the AFIS related questioning. [RR-V-123].

As such it is clear that Appellant did not timely object to either the admission of evidence about AFIS or the admission of evidence that the AFIS system included records of people who had been arrested. Instead

Appellant allowed that testimony to be admitted without any objection and only belatedly raised an objection after two other questions had been asked and answered. Multiple courts have concluded that when an objection is not submitted until after additional questions have been asked then the objection is untimely. See *Nino v. State*, 223 S.W.3d 749, 755 (Tex. App.—Houston [14th Dist.] 2007, no pet) (where prosecutor asked leading question "laced with" offensive information, witness answered, and prosecutor asked another question before defendant objected, objection was not timely); Martinez v. State, 131 S.W.3d 22, 38 (Tex. App.—San Antonio 2003, no pet) (objection was too late where after question, witness answered and prosecutor moved on to another question before defense counsel objected).

Texas law is very clear that if a party fails to object until after an objectionable question has been asked and answered and can show no legitimate reason to justify the delay, the objection is untimely and error is waived. *Lagrone v. State,* 942 S.W. 2d 602, 618 (Tex. Crim. App. 1997). Appellant did not object to any of the AFIS related questions until after they had already been asked and answered. Nor has Appellant provided any legitimate reason to justify his delay in objecting to these questions. Therefore Appellant's eventual objection to this line of question was untimely and any error related to the AFIS related questions has been

waived.

## II. The AFIS related evidence was neither irrelevant nor unfairly prejudicial.

Furthermore, even if the Appellant is deemed to have made timely objections concerning the AFIS related evidence, Appellant is still not entitled to any relief as the trial court acted well within its discretion in determining that the AFIS related evidence was neither irrelevant nor unfairly prejudicial.

The test for relevance is whether a reasonable person would believe the particular piece of evidence is helpful in determining the truth or falsity of any fact that is of consequence to the case. See *Montgomery v. State,* 810 S.W. 2d 372, 376 (Tex. Crim. App. 1990). Nor does evidence have to be dispositive of an issue to be relevant. Evidence merely tending to affect the probability of the truth or falsity of a fact in issue is still relevant. *Montgomery,* 810 S.W. 2d at 376. All the evidence has to do is provide a "small nudge" towards proving or disproving some fact of consequence. *Id.* This broad definition of relevance allows a liberal policy of admission of evidence for the jury's consideration. *Morales v. State,* 32 S.W.3d 862, 865 (Tex.Crim.App.2000).

In the present case, it is clear the AFIS evidence was helpful in

proving a fact of consequence. Because the suspect had his face obscured during the course of the robbery, the State's case was heavily dependent upon the forensic evidence obtained at the crime scene. As such the thoroughness and competence of the law enforcement investigation was of definite importance in this case. Appellant obviously recognized that the nature of the police investigation was critical to this case as he extensively cross-examined the State's witnesses on the nature of their investigation and devoted considerable time in his closing argument to attacking how the State collected evidence in this case. [RR-VI-35-37].

The testimony about AFIS was therefore important because it helped demonstrate a fact of importance in the case: specifically that the police conducted a thorough investigation, utilizing every reasonable resource that was available to them. And naturally it was necessary to provide the jury with background information about what AFIS was and how it worked because without that information, the fact that the State had utilized AFIS as part of the investigation would mean nothing to the jury. The jury needed to know why utilizing AFIS demonstrated that the police had conducted a thorough, fair investigation, and that necessitated them knowing what AFIS was and why it was a useful investigative tool. Therefore the AFIS evidence was relevant to the State's case as it helped demonstrate that the police had

performed a proper investigation in this case.

Appellant now contends that the evidence about the lack of fingerprints was of no real value to the State's case and could have been introduced through other means. As to the first point, it is a common trial tactic for parties to introduce evidence harmful to their own case so as to control how that evidence is brought before the fact finder and to hopefully "pull the sting" of the harmful evidence. See *Stone v. State,* 17 S.W. 3d 348, 349 (Tex. App.-Corpus Christi 2000, pet. ref'd). Thus it was entirely reasonable for the State to elicit from its own witnesses the fact that no fingerprints matching the Appellant were located at the scene. The prosecutor had to expect that if he did not introduce the lack of fingerprint evidence the defense would, and that by introducing the evidence himself he could at least get value in showing the thoroughness and fairness of the police investigation in this case.

As for Appellant's second point, the fact that relevant evidence could have been presented through some other means does not make the evidence irrelevant. The AFIS related evidence was relevant both to pull the sting from the lack of fingerprint evidence and to give the jury the full context of how the State conducted its investigation in this case, and therefore the evidence was properly held to be relevant. The Appellant's

proposed method might have been adequate for introducing sufficient evidence to "pull the sting" from the lack of fingerprint evidence, but it would have been wholly inadequate for giving context to how the State conducted its investigation. The evidence was relevant for multiple purposes, and the State therefore was justified in seeking to admit it in a manner that would address all of the ways in which the evidence was relevant.

Of course just because evidence is relevant does not automatically make it admissible. Otherwise relevant evidence can still be deemed inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. See TEX. R. EVID. 403; *Casey v. State,* 215 S.W. 3d 870, 879 (Tex. Crim. App. 2007).

In evaluating the relative probative value versus the unfairly prejudicial effect of evidence, trial courts must consider 1) the inherent probative force of the proffered item of evidence; (2) the proponent's need for that evidence; (3) any tendency of the evidence to suggest decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given

undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State,* 210 S.W. 3d 637, 641-642 (Tex. Crim. App. 2006). The trial court's determination is only to be reversed after a "clear abuse of discretion." *Mozon v. State,* 991 S.W. 2d 841, 84 (Tex. Crim. App. 2004).

Considering the six *Gigliobianco* factors, it is clear the trial court did not abuse its discretion in finding the AFIS evidence was not unfairly prejudicial. As to the first and second factors, the evidence clearly had probative force. Probative force is not precisely the same thing as relevance. Instead probative force means how strongly an item of evidence serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponents need for that item. *Gigliobianco,* 210 S.W. 3d at 641. The prior discussion in this brief about relevance already addressed how the AFIS testimony served to make more probable the existence of a fact of consequence to the litigation, specifically that the police conducted a thorough, competent investigation, fully utilizing all available resources to investigate every investigative lead on the case. Furthermore, the State had a clear need for this evidence, as much of the

defense strategy for the case was in attacking the competence and thoroughness of the police investigation. If the jury lost confidence in the fairness and thoroughness of the police investigation they would be far more likely to disregard the other forensic evidence obtained by the investigating officers and without that evidence the State would have no case. Therefore the probative force of this evidence was clear, and the State had a definite need for the evidence.

As for the third *Gigliobianco* factor, the tendency of this evidence to suggest decision on an improper basis was exceedingly slight. The evidence presented at trial was very clear that it was not only people who had been arrested that were in AFIS, but rather all State employees and anyone who had ever undergone a State background check were also in the system. [RR-V-123]. Indeed the prosecutor himself established that his own fingerprints were in the AFIS system. Because the evidence established that AFIS held data from a wide segment of the population, there is little reason to believe that jurors would infer the Appellant had a criminal history simply because his fingerprints were in AFIS.

Notably, the Dallas Court of Appeals addressed a similar issue in the *Mata* case concerning evidence about the CODIS DNA database. See *Mata v. State,* No. 05-05-00504-CR, 2007 WL 882439, at 5 (Tex. App.-Dallas

2007, pet. ref'd)(not designated for publication). The defense in *Mata* raised the same concern that has been raised in this case, that jurors might think that someone in CODIS has been previously convicted of an offense. *Id.* The Dallas Court of Appeals concluded though that since the evidence presented in that case showed that not just criminals had their fingerprints in CODIS but also government employees, the court could not make the assumption that the jurors would conclude that the defendant was a "known offender" rather than just a "known individual." *Id*. That same logic applies in the present case. Any danger that the evidence about AFIS would lead jurors to decide the case on an improper basis was removed due to the testimony that AFIS included data on non-arrestees. Therefore there was no unfair prejudice.

Appellant's argument that it is unlikely that jurors would believe a defendant accused of robbing a convenience store had ever been a former State employee or had received a State background check is unpersuasive and unsupported by any facts. Appellant voir dired on the question of whether the jury could give the Appellant the full presumption of innocence, and no juror indicated any problem with doing so. [RR-IV-132]. Furthermore, prior to the case being submitted to the jury, the trial court gave the jury specific instructions that they could not consider the fact that

the defendant had been indicted as evidence against him. [CR-I-25]. The presumption is that juries follow the trial court's instructions. See *Thrift v. State,* 176 S.W. 3d 221, 224 (Tex. Crim. App. 2005). Appellant has produced no evidence to rebut that presumption and establish that the jury disregarded the trial court's explicit instructions. Therefore the presumption of proper jury conduct should hold.

To believe that the jury would conclude that Appellant must have a criminal history due to being in AFIS, it is necessary to believe that the jury lied en masse during voir dire, ignored the court's specific instructions not to hold the fact that he had been indicted against him, and apparently believed that no one who has ever worked for the State or received a background examination from the State could ever be accused of a criminal offense. None of those suppositions are supported by any evidence and the last requires a belief that is patently illogical. Therefore there is no rational basis to believe that the jury could have used the AFIS evidence for an improper purpose.

It must also be noted that far more potentially prejudicial evidence about possible criminal history has been permitted than AFIS related data. For instance it is long settled Texas law that in cases where the jury may be called upon to access punishment, the prosecutor may during voir dire

question the panel about sentence enhancements so long as the explanation of the law stays hypothetical and does not inform the jury of specific enhancement allegations against the defendant. See *Bevill v. State,* 573 S.W. 2d 781, 783 (Tex. Crim. App. 1978). Such hypotheticals have far more potential to alert a clever jury that a defendant has prior criminal history than information about a database that contains information not just on prior arrestees, but also on all State employees and everyone who has received a State background check. As such if the former conduct is permissible then the later clearly does not risk signaling to the jury that a defendant has a prior criminal history.

As to the fourth *Gigliobianco* factor, there was clearly no risk that the AFIS information would tend to confuse or distract the jury from the main issues of the trial. The concept of AFIS, that there is a government database with fingerprints in it, is a simple one, and the prosecutor quickly and efficiently moved through the AFIS questions. Thus there is no reason to believe these questions injected any confusion or distraction into the trial.

Likewise as to the fifth *Gigliobianco* factor, there is no reason to believe AFIS related evidence would be given undue weight by the jury. While relevant to help show that the investigating officers did a thorough job in their investigation, it was just one of the pieces of evidence showing how

the investigation was conducted. Nor is evidence about the existence of a fingerprint database the type of evidence that is intrinsically inflammatory or otherwise likely to fixate a jury's attention; especially when the jury is explicitly informed that the database is not just for suspected criminals but rather holds the fingerprints of everyone who has ever worked for the state government or received a background check from same.

And as to the final *Gigliobianco* factor, it is clear the AFIS evidence did not consume a great deal of time or needlessly repeat existing evidence. The prosecutor asked a grand total of four questions about AFIS. [RR-V-122-124]. The answers to those four questions was all of seven sentences long (one of which was a single word sentence.) *Id.* And after those brief questions, the prosecutor never mentioned AFIS again for the rest of the trial. Therefore the amount of time spent on this subject was minimal. Nor did these questions repeat existing evidence, as this was the only evidence to show that the investigating officers did a thorough job in attempting to match the fingerprints taken at the scene with known fingerprint samples.

As such all six of the *Gigliobianco* factors support the trial court's determination that the probative value of the AFIS evidence was not substantially outweighed by its danger of unfair prejudice. The AFIS evidence's probative value may have been relatively modest, but the danger

of unfair prejudice from that evidence was negligible, and the time spent developing the evidence was exceedingly minor. Therefore its probative value was clearly not substantially outweighed by the danger of unfair prejudice.

The AFIS related evidence was neither irrelevant nor unfairly prejudicial and as such the trial court acted well within its sound discretion in allowing that evidence to be admitted into evidence. As such the trial court's decision should be upheld on appeal.

### III. Any error from the admission of the AFIS evidence was harmless.

In the alternative, even if there was error in the admission of the AFIS evidence, that error would be harmless given the overwhelming evidence of Appellant's guilt.

The erroneous admission of evidence is non-constitutional error under Rule 44.2(b) of the Texas Rules of Appellate Procedure. See *Ketchum v. State,* 199 S.W. 3d 581, 593 (Tex. App.-Corpus Christi 2006, pet. ref'd). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Casey,* 215 S.W. 3d at 885. In

the present case, it is clear that any error from the admission of the AFIS records would not have had a substantial and injurious effect or influence on the verdict, and thus such error would be harmless.

Independent from the AFIS evidence, there was overwhelming evidence of Appellant's guilt. The victim, Ms. Josefa Tamayo, established that the man who robbed her was slightly taller than her (she being 5'5) and was heavyset. [RR-V-32-33]. Detective Amy Grothe would later establish the Appellant was 5'7 and weighed about 200 pounds, a height and weight consistent with Ms. Tamayo's description of the man who robbed her. [RR-V-114]. But far more conclusive was the evidence established by Ms. Tamayo and by the video tapes of the robbery that the robber cut himself with a knife and got his blood on both the knife and the door handle. [RR-V-21-22, State's Exhibits 1-2, 8, 15]. That same blood evidence would then be established to a scientific certainty by forensic scientist Ms. Lisa Harmon Baylor as belonging to the Appellant. [RR-V-152, 154; State's Exhibit 21]. The odds of a random unrelated person providing the DNA match on the blood sample were literally in the quintillions as to both samples. *Id.* That is as close to an absolute certainty as it is possible to be about anything. Thus there was overwhelming evidence showing that Appellant was the man who committed the aggravated robbery.

At the same time any prejudicial effect from the admission of the AFIS related information would be incredibly slight. No specifics were provided about any actual conviction Appellant ever received. Indeed the AFIS testimony did not even indicate that you had to have a conviction to be in their system. All it indicated was that people who were booked into a jail facility had their information go into AFIS. [RR-V-123]. That is not an indication of a conviction, since all it takes to go to a jail is simply being arrested. Innocent people can plausibly be arrested, and people can likewise be arrested for youthful indiscretions, or minor traffic offenses. The mere fact that a person has been to jail does not mean they are a bad person or that they have a predisposition to commit crimes, and it is implausible to believe that even if the jury believed from the AFIS testimony that Appellant had previously been arrested, that that testimony without any details about the circumstances surrounding that arrest, would so influence the jury as to impact their verdict. Our system presumes that our juries are rational and no rational fact finder would rush to judgment based on merely a hint that a defendant had once been arrested.

The risk of an irrational response to the AFIS evidence was even further eliminated in this case because the trial prosecutor took active steps to minimize any potential for inflammatory impact from the AFIS evidence.

As already discussed the prosecutor specifically established that his own fingerprints were also in AFIS, thus implicitly arguing that you could be a law abiding person and still be in the system. [RR-V-123]. The prosecutor then reiterated that non-criminals have their fingerprints in AFIS. *Id.* And after that the prosecutor never made any reference to AFIS again for the remainder of the trial. Between the prosecutor emphasizing that being in AFIS does not make you a criminal, and then the prosecutor not referencing AFIS again at any point in the trial, the potential improper prejudicial impact of any AFIS related evidence would obviously be greatly lessened. Given the prosecutor's lack of emphasis on the AFIS evidence the jury would have no reason to think the AFIS evidence had any importance (other than in helping to show the thoroughness of the police investigation).

As such when we balance the overwhelming evidence of Appellant' guilt, the inherent non-inflammatory nature of the AFIS evidence, and the active measures the trial prosecutor took to minimize any risk of misuse of the AFIS evidence, it is clear that the AFIS evidence would not have had a substantial and injurious effect or influence on the verdict. Accordingly, even if the admission of that evidence was error any such error was harmless and can be disregarded.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that this Honorable Court affirm the judgment of the trial court.

.

**Respectfully submitted,**


**STEPHEN B. TYLER**
**CRIMINAL DISTRICT ATTORNEY**

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone:  (361) 575-0468
Facsimile: (361) 576-4139


**ATTORNEYS FOR THE APPELLEE,**
**THE STATE OF TEXAS**

# CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that the number of words in Appellee's Brief submitted on March 18, 2015, excluding those matters listed in Rule 9.4(i)(1) is 5,656.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone:  (361) 575-0468
 Facsimile: (361) 576-4139

## CERTIFICATE OF SERVICE

I, Brendan Wyatt Guy, Assistant Criminal District Attorney, Victoria County, Texas, certify that a copy of the foregoing brief has been served on W. A. (Bill) White, Attorney for the Appellant, by depositing same in the United States Mail, postage prepaid on the day of March 18, 2015.

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
E-mail: bguy@vctx.org
Telephone: (361) 575-0468
Facsimile: (361) 576-4139